UNITED STATES *v.* STEWART.

No. 13.   Argued October 17, 1940.—Decided November 12, 1940.

*Assistant Attorney General Clark,* with whom *Solicitor General Biddle* and *Messrs. Sewall Key* and *Arnold Raum* were on the brief, for the United States.

*Messrs. W. Glenn Harmon* and *Ernest L. Wilkinson,* with whom *Mr. John W. Cragun* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case is here on certiorari to resolve a conflict of the decision below (106 F. 2d 405) with *Stern Brothers & Co.* v. *Commissioner,* 108 F. 2d 309.

During the year 1930 respondent purchased farm loan bonds issued by joint-stock land banks under the Federal Farm Loan Act of 1916 (39 Stat. 360). The purchases were made for the prospective increment to the bonds and not for their interest. At the time the purchases were made the banks were in receivership. The bonds were acquired at prices substantially below par. In making these purchases respondent relied upon statements contained in circulars and bulletins issued by the Farm Loan Board, reasonably believing that he was purchasing securities the profit upon which in case of sale would be exempt income. A part of the bonds so purchased, with their appurtenant coupons, was sold in 1931; and a part was surrendered in that year to the receiver of the issuing

bank in exchange for cash paid to respondent "under and pursuant to the covenants contained" in the bonds. Each of these transactions resulted in a profit to respondent.[1] The Commissioner held that those gains were taxable income. Consequently, respondent included them in his income tax return for the year 1931 and claimed a refund. On disallowance of that claim, this suit for refund was instituted. The District Court determined that the gains so realized were income and taxable. 24 F. Supp. 145. The Circuit Court of Appeals reversed.

Sec. 22 (a) of the Revenue Act of 1928 (45 Stat. 791) includes in gross income "gains, profits, and income derived from . . . sales, or dealings in property, whether real or personal." Sec. 22 (b) (4) exempts from taxation "Interest upon . . . securities issued under the provisions of the Federal Farm Loan Act, or under the provisions of such Act as amended."

If those two sections are controlling, it is clear that respondent is taxable on these gains, for they fall squarely within the definition of gross income contained in § 22 (a) and they are not "interest"[2] within the meaning of § 22 (b) (4). But respondent places his main reliance on § 26 of the Federal Farm Loan Act which provides that "farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from

---

[1] These purchases were for respondent and his wife who filed separate returns for the year in question.

[2] The record does not show what portion, if any, of the sums received on the sale or on the exchange of the bonds and appurtenant coupons was received as payment on accrued interest. Nor did the complaint allege that any portion of the sums received was exempt because it was "interest" on the bonds. Hence that point was not raised below or here.

Federal, State, municipal, and local taxation." It is urged that the gains here involved were "income derived" from the bonds within the meaning of that section.

We disagree with that conclusion. It is our view that under § 26 respondent is entitled to an exemption only for interest on the bonds.

To be sure, "income" is a generic term amply broad to include capital gains for purposes of the income tax. *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509. It is likewise true that Congress will be presumed to have used a word in its usual and well-settled sense. *Old Colony R. Co.* v. *Commissioner,* 284 U. S. 552; *Deputy* v. *du Pont,* 308 U. S. 488. But § 26 does not exempt simply "income"; it exempts the bonds and the "income derived therefrom." Analytically, income derived from mere ownership of the bonds is clearly different from income derived from dealings or transactions in the bonds. As stated in *Willcuts* v. *Bunn,* 282 U. S. 216, 227–228:

"The tax upon interest is levied upon the return which comes to the owner of the security according to the provisions of the obligation and without any further transaction on his part. The tax falls upon the owner by virtue of the mere fact of ownership, regardless of use or disposition of the security. The tax upon profits made upon purchases and sales is an excise upon the result of the combination of several factors, including capital investment and, quite generally, some measure of sagacity; the gain may be regarded as 'the creation of capital, industry and skill.' *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 531."

True, the *Bunn* case dealt only with the alleged constitutional inhibition against taxation of capital gains on municipal bonds and not with a specific statutory exemption. But its analysis is cognate here as indicating that, in absence of clear countervailing evidence, an exemption of "income derived" from a security does not embrace "income derived" from transactions in that security.

There are no circumstances here which should make the reasoning of the *Bunn* case inapplicable.

The Revenue Act of 1916 (39 Stat. 756) was enacted shortly after the Farm Loan Act by the same Congress and at the same session.[3] Sec. 2 of that Act, like § 22 (a) of the 1928 Act, included in taxable income "gains, profits, and income derived from . . . sales, or dealings in property." And § 4 of that Act, like § 22 (b) (4) of the 1928 Act, exempted from taxation "interest upon . . . securities issued under the provisions of the Federal farm loan Act." It is clear that "all acts *in pari materia* are to be taken together, as if they were one law." *United States* v. *Freeman*, 3 How. 556, 564. That these two acts are *in pari materia* is plain. Both deal with precisely the same subject matter, *viz.*, the scope of the tax exemption afforded farm loan bonds. The later act can therefore be regarded as a legislative interpretation of the earlier act (*Cope* v. *Cope*, 137 U. S. 682, 688; cf. *Stockdale* v. *Insurance Companies*, 20 Wall. 323, 331–332) in the sense that it aids in ascertaining the meaning of the words as used in their contemporary setting.[4] It is therefore en-

---

[3] The Farm Loan Act became law on July 17, 1916, the Revenue Act of 1916 on September 8, 1916.

[4] It should be noted in this connection that the exemption of "interest" contained in § 4 of the 1916 Act was continued in each subsequent Revenue Act until 1934. Sec. 213 (b) (4), Revenue Act of 1918 (40 Stat. 1057, 1065); § 213 (b) (4), Revenue Act of 1921 (42 Stat. 227, 238); § 213 (b) (4), Revenue Act of 1924 (43 Stat. 253, 268); § 213 (b) (4), Revenue Act of 1926 (44 Stat. 9, 24); § 22 (b) (4), Revenue Act of 1928 (45 Stat. 791, 798; § 22 (b) (4), Revenue Act of 1932 (47 Stat. 169, 178). By § 22 (b) (4) of the Revenue Act of 1934 (48 Stat. 680, 687) the exemption was generalized so as to include interest on obligations of any federal corporation which is an instrumentality of the United States, subject to the limitation that interest is exempt only if and to the extent provided for in the acts of Congress authorizing the issuance of such obligations. The Senate Committee (S. Rep. No. 558, 73d Cong., 2d Sess., pp. 23–24; Internal Rev. Bull., Cum. Bull. 1939–1, Part 2, p. 604) made the following comment on that change:

titled to great weight in resolving any ambiguities and doubts. Cf. *United States* v. *Stafoff*, 260 U. S. 477, 480. In that view the express exemption of interest alone makes tolerably clear that capital gains are not exempt.

In support of the contrary view great stress is placed on the legislative history of § 26. Extensive references are made to the hearings on this bill and to the debates in Congress. Typical are the statements or criticisms that the bill gave "these investments a distinct advantage over other investments," [5] that the exemption provision was important,[6] that maintenance of a market for the bonds was desirable,[7] that the exemption was too broad.[8] These comments, however, are inconclusive. They are not suf-

---

"This is merely a clarifying change made by the House. Under the language of this section, as contained in existing law, interest on securities issued under the Federal Farm Loan Act, or such Act as amended, is expressly excluded from gross income and thereby made exempt from the income tax. Other Acts have been enacted which also exempt the interest on obligations issued thereunder from tax. In order to bring the section into accord with the Acts authorizing such exemptions and to avoid the necessity of referring to all such Acts, a general provision has been inserted by the House excluding from gross income the interest upon the obligations of a corporation organized under Act of Congress if such corporation is an instrumentality of the United States; subject to the limitation, however, that the interest is exempt only to the extent provided for in the Acts of Congress authorizing the issuance of such obligations."

[5] Cong. Record, 64th Cong., 1st Sess., Vol. 53, Part 8, p. 7312. And see H. Rep. No. 630, 64th Cong., 1st Sess., p. 8.

[6] Joint Hearings before Sub-Committees of the Committees on Banking and Currency, Rural Credits, 63d Cong., 2d Sess., pp. 95–97; S. Doc. No. 380, 63d Cong., 2d Sess., Agricultural Credit, Rep. U. S. Commission, pp. 17, 33.

[7] H. Doc. No. 679, 63d Cong., 2d Sess., pp. 15, 16.

[8] Cong. Record, *op. cit., supra*, note 5, pp. 6850, 7311. Nor is it significant that substitute bills were offered (Cong. Record, *op. cit., supra*, note 5, pp. 7385, 7387; S. 4061, 63d Cong., 2d Sess.) by the terms of which "interest" was exempted. These were overall substitutes. Therefore the implication is not warranted that the failure of their adoption was due to the desire of Congress to grant a broader exemption than "interest."

ficiently discriminating in their analysis or criticism to throw light on the narrow issue involved here.

Respondent's resort to administrative interpretation of § 26 is equally unproductive. No established administrative practice is shown. The holding of the unpublished memorandum [9] of the General Counsel of the Bureau of Internal Revenue relied upon is not precisely in point, even were we to assume that it is entitled to authoritative weight.[10] It merely ruled that a joint-stock land bank was not taxable on gains from purchases of its own bonds. And when the question of the taxability of an individual on his capital gains from sales of these bonds was raised less than two years later, another such ruling was issued to the effect that he did not have the benefit of any exemption.[11]

Nor is respondent materially aided by the change in § 26 made by § 817 of the Revenue Act of 1938 (52 Stat. 447, 578). That amendment provides that "all income, except interest, derived" from such bonds, shall be included in gross income.[12] It is urged that this amendment is affirmative recognition by the Congress that § 26 exempts these capital gains. But here again the legislative record is ambiguous and hence inconclusive. The purpose of § 817, as originally introduced, clearly was to

---

[9] This is reproduced, so far as material here, in S. Hearings, Committee on Finance, 75th Cong., 3d Sess., H. R. 9682, Part 4, pp. 619–621.

[10] See *Helvering* v. *New York Trust Co.*, 292 U. S. 455, 468.

[11] See Agricultural Securities Corp. v. Commissioner, 39 B. T. A. 1103, 1111.

[12] This amendment is prospective only. It provides:

"Notwithstanding the provisions of section 26 of the Federal Farm Loan Act, as amended, in the case of mortgages made or obligations issued by any joint-stock land bank after the date of the enactment of this Act, all income, except interest, derived therefrom shall be included in gross income and shall not be exempt from Federal income taxation."

make certain that capital gains realized by joint-stock land banks on transactions in their own obligations would not be exempt.[13] The section was amended on the floor of the Senate to its present form on the suggestion that "perhaps the language is not as broad as it should be."[14]

---

[13] S. Rep. No. 1567, 75th Cong., 3d Sess., p. 47. This report clearly indicates that the Committee was of the view that under § 26 joint-stock land banks were exempt from capital gains resulting from purchases of their own obligations. A change in that regard was clearly intended, for the Committee said, p. 47:

"This section subjects to Federal income taxation the capital gain realized by a joint-stock land bank on the purchase of its own obligations or of mortgages made by it. It has been brought to the attention of the committee that these banks have been purchasing their own bonds at below par and issuing new bonds at or above par. Gain realized on such a purchase is, under the law, taxable income and in the case of an ordinary corporation, is taxed. Under the Federal Farm Loan Act, however, which governs the taxability of. obligations. of joint-stock land banks, such income is exempt. The committee is of the opinion that such income ought to be taxed."

The Committee draft of § 817 (then § 816) provided for that change as follows (H. R. 9682, 75th Cong., 3d Sess.):

"Notwithstanding the provisions of section 26 of the Federal Farm Loan Act, as amended, gain realized on the acquisition by a joint-stock land bank of obligations issued by it or mortgages made by it, if such obligations or mortgages are made or issued after the date of the enactment of this Act, shall not be exempt from Federal income taxation."

As indicated, *supra,* note 9, the unpublished memorandum of the General Counsel of the Bureau of Internal Revenue ruling that a joint-stock land bank was not taxable on gains from purchases of its own bonds was before the Senate Committee. Cf. the recommendation made to the Committee, S. Hearings, *op. cit., supra,* note 9, pp. 614, 615.

[14] Statement by Senator King, member of the Committee on Finance, Cong. Record, Vol. 83, 75th Cong., 3d Sess., p. 4959. When Senator King offered the amendment, he gave the following explanation (*id.* p. 5174):

"The bill as reported subjected to Federal income taxation capital gains realized by a joint-stock land bank on obligations issued and mortgages made by it after the date of enactment of the act. The

The purpose of the amendment may well have been to clarify the doubtful and uncertain status of capital gains which were not covered by the Committee's recommendation. There is no clear and convincing evidence that it was designed to change existing law, so far as these other categories of capital gains were concerned. But even if a contrary implication were to be assumed, it would not override so belatedly the clear inference, based on a long series of revenue acts exempting only interest, that capital gains were taxable.

Respondent further argues that comparison of other exemption statutes with the language of § 26 reinforces the view that these capital gains are exempt. In that connection our attention is called to numerous statutes—some exempting only bonds[15] and others exempting principal and interest;[16] some exempting a corporation, "including the capital stock and surplus therein, and the income derived therefrom,"[17] and others[18] containing

---

effect of the amendment is not only to tax that gain but also to tax gain realized by another joint-stock land bank or by an individual or corporation which itself is not exempt from Federal taxation. Thus, gain on a sale of such a joint-stock land bank bond by an investor is subject to tax. The amendment continues the present provision of law under which interest on such bonds and mortgages is exempt from Federal taxation."

[15] Statutes governing Panama Canal Toll Bonds (32 Stat. 481, 484; 36 Stat. 11, 117) and Postal Savings Bonds (36 Stat. 814, 817) are cited.

[16] Reference is made to various statutes including those pertaining to Treasury notes (38 Stat. 251, 269) and several of the Liberty loans (40 Stat. 35; 40 Stat. 288, 291; 40 Stat. 1309, 1310).

[17] Federal Reserve Act of December 23, 1913 (38 Stat. 251, 258). And see Bankhead-Jones Farm Tenant Act of July 22, 1937 (50 Stat. 522, 528); Agricultural Adjustment Act of 1938 (52 Stat. 31, 75).

[18] Reference is made to the War Finance Corporation Act of April 5, 1938 (40 Stat. 506, 511); Reconstruction Finance Corporation Act of January 22, 1932 (47 Stat. 5, 9); Home Owners' Loan Act of June 13, 1933 (48 Stat. 128, 130).

somewhat similar exemptions for the corporation but only an exemption as to principal and interest for its bonds; and still others [19] containing the same kind of exemption as § 26 of the Farm Loan Act. From this painstaking review respondent argues that where Congress has desired to exempt only "interest" it has said so and where it has intended to grant a broader exemption it has used the word "income"; that statutes exempting only "interest" have a narrower meaning than those exempting "income"; and that this long and recurrent legislative practice discloses a clear design on the part of Congress to draw distinctions and to shape the various exemptions to suit its differing policy in divers situations.

Suggestive as this analysis is, it is entitled to little weight. No mere collation of other statutes can be decisive in determining what the instant statute means. The meaning of each phrase must be closely related to the time and circumstance of its use. The phrase "income derived therefrom" as used in § 26 clearly has taken on coloration from the express exemption for nearly a quarter century of only interest on these bonds. We have no occasion to intimate an opinion as to the meaning of other similar statutes. It is sufficient here to note that in another legislative setting "income derived" from bonds may or may not be synonymous with "interest" on bonds. That must necessarily be dependent on a host of factors which only a minute scrutiny of the particular legislative scheme would reveal. For this reason the fact that the same Congress which in 1938 amended § 26 granted an exemption to another federal instrumentality [20] couched in the identical language of the original § 26 is merely a straw in the wind. So far as the instant

---

[19] Federal Farm Mortgage Corporation Act of January 31, 1934 (48 Stat. 344, 347); Commodity Credit Corporation Act of March 8, 1938 (52 Stat. 107, 108).

[20] Commodity Credit Corporation, *supra*, note 19.

bonds are concerned, that in itself is entitled to little weight as against the long standing express exemption in successive revenue acts of interest alone.

Respondent also stresses the fact that circulars, prepared and distributed by the Farm Loan Board "advising investors of the merits and advantages of farm loan bonds," [21] stated that these bonds and their income were "free from all forms of táxation" including the income tax, that "this exemption is complete," etc. As we have said, it was found that respondent relied upon such statements reasonably believing that capital gains would not be taxable. But aside from the fact that those statements are hardly more specific than the statute itself, they cannot be accorded the weight of uniform and long standing administrative treatment.[22] There was no authority for the board to make representations that capital gains were or were not tax exempt. That administrative function resided only in the Treasury. An officer or agency of the United States to whom no administrative authority has been delegated cannot estop the United States even by an affirmative undertaking to waive or surrender a public right. *Utah* v. *United States,* 284 U. S. 534, 545–546; *Wilber National Bank* v. *United States,* 294 U. S. 120, 123–124.

We return to our conclusion that the weight of these various considerations leans to the view that only interest is exempt. The cumulative strength of the several factors urged by respondent is not such clear evidence

---

[21] Pursuant to the authority vested in the Federal Farm Loan Board by § 3 of the Act.

[22] Nor can the casual statement by the Secretary of the Treasury, in the course of a Congressional hearing on the Revenue Act of 1918, to the effect that "Land bank bonds carry a wider exemption than Liberty bonds," (S. Hearings, H. R. 12863, 65th Cong., 3d Sess., Part 4, p. 117) carry authoritative weight, as it does not even purport to be a discriminating analysis of this problem in its various aspects.

of Congressional purpose as to make inapposite the application of the reasoning of *Willcuts* v. *Bunn, supra,* to this situation. In that posture of the case, respondent has succeeded only in casting some doubt on the proper construction of the statute. Yet those who seek an exemption from a tax must rest it on more than a doubt or ambiguity. *Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146; 163 U. S. 416, 423. Exemptions from taxation cannot rest upon mere implications. *United States Trust Co.* v. *Helvering,* 307 U. S. 57, 60. As stated by Mr. Justice Cardozo in *Trotter* v. *Tennessee,* 290 U. S. 354, 356, "Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced." And see *Pacific Co., Ltd.,* v. *Johnson,* 285 U. S. 480, 491. Hence broad, generalized statutory exemptions have frequently been construed narrowly and confined to those situations where the subject matter of the exemption was directly, not indirectly or remotely, involved. *Murdock* v. *Ward,* 178 U. S. 139; *Hale* v. *State Board of Assessment and Review,* 302 U. S. 95; *United States Trust Co.* v. *Helvering, supra.* The exemption contained in § 26 of the Farm Loan Act must be so construed.

For these reasons the challenged judgment must be

*Reversed.*

MR. JUSTICE ROBERTS is of opinion that the judgment should be affirmed on the grounds stated by the Circuit Court of Appeals in its opinion below, 106 F. 2d 405.