*Decision will be entered under Rule 50.*

WILLIAM H. NOLL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98305. Promulgated January 31, 1941.

*John A. Selby, Esq.*, and *George B. Buist, C. P. A.*, for the petitioner.

*L. W. Shaw, Esq.*, for the respondent.

OPINION.

MELLOTT: This proceeding involves a deficiency in income tax for the years 1935 and 1936 in the aggregate amount of $71,737.27. According to the notice, there was an overassessment for the year 1934 in the amount of $2,330.78. The proceeding was submitted upon a stipulation of facts. The facts are found to be as stipulated; but for present purposes they may be summarized.

Petitioner, a resident of Fort Wayne, Indiana, filed his income tax returns for the years 1935 and 1936 with the collector of internal revenue at Indianapolis, Indiana.

Prior to 1935 petitioner purchased the following bonds:

*Chicago Joint Stock Land Bank Bonds*

| Date acquired | Par value | Cost |
|---|---|---|
| December 14, 1925 | $25,000 | $25,500 |
| January 21, 1933 | 10,000 | 2,100 |
| January 21, 1933 | 280,000 | 56,000 |
| Total | 315,000 | 83,600 |

*Southern Minnesota Joint Stock Land Bank Bonds*

| Date acquired | Par value | Cost |
|---|---|---|
| January 10, 1922 | $25,000 | $25,562.50 |
| February 28, 1922 | 25,000 | 25,250.00 |
| December 28, 1922 | 10,000 | 10,150.00 |
| March 10, 1923 | 10,000 | 10,137.50 |
| January 22, 1933 | 170,000 | 23,800.00 |
| Total | 240,000 | 94,900.00 |

The joint stock land banks above mentioned were chartered under the provisions of the Federal Farm Loan Act, approved July 17, 1916. The bonds had been issued pursuant to that act, and, as provided therein, each bond contained a provision stating that it "and the income derived therefrom shall be exempt from Federal, State, municipal and local taxation."

On May 2, 1932, a receiver was appointed by the Farm Credit Administration for the Southern Minnesota Joint Stock Land Bank in accordance with section 29 of the Farm Loan Act and on October 1, 1932, a receiver was likewise appointed for the Chicago Joint Stock Land Bank. The receiverships for the two banks were still in effect when the instant proceeding was submitted.

Prior to October 1, 1932, all matured interest coupons on the bonds of the Chicago Joint Stock Land Bank purchased by petitioner had been paid in full. On that date there were amounts of interest accrued on the bonds for the period between the date of the last preceding matured (and paid) interest coupons and October 1, 1932, as follows:

| Date bond acquired | Par value | Interest accrued but unpaid Oct. 1, 1932 |
|---|---|---|
| December 14, 1925 | $25,000 | $562.50 |
| January 21, 1933 | 10,000 | 197.92 |
| January 21, 1933 | 280,000 | 6,029.20 |

At the time petitioner acquired the bonds purchased on January 21, 1933, no part of the interest referred to in the preceding paragraph had been paid. No amounts of interest were considered by the receiver of this bank to have accrued after October 1, 1932.

In 1934 petitioner delivered the bonds of the joint stock land banks, together with proofs of claim, to the respective receivers, who issued to him "Receiver's Certificates of Delivery of Coupon Joint Stock Farm Loan Bonds and Proof of Claim." The certificates stated that petitioner was "the registered holder of this certificate who (or whose predecessor in interest) has delivered to the Receiver * * * Joint Stock Farm Loan Bonds [in the aggregate amount shown] and made proof of claim thereon * * *." By the terms of the certificate it, and the claim represented thereby, was transferable only on the books of the receiver. It was also stated that "dividends payable on the claim represented by this certificate may be paid by mailing checks therefor to the registered owner at the address appearing on the books of the receiver * * *", and that "the Receiver may require that this certificate be surrendered at the time of payment of the final dividend * * *."

Beginning in 1934 and continuing during the years 1935 and 1936 petitioner received payments of dividends. Each of the dividends received by petitioner on account of his claims on the bonds of the Chicago Joint Stock Land Bank was accompanied by a statement explaining that the payment made included dividends of the "face amount of bonds and unmatured interest accrued thereon up to and including September 30, 1932." Upon the bonds aggregating $290,000 which had been purchased by petitioner on January 21, 1933, at a total cost of $58,100, the receiver made aggregate payments to petitioner of $207,358.98, allocating it as follows: To principal, $203,000; to interest, $4,358.98. Upon the remaining $25,000 of Chicago Joint Stock Land Bank bonds, which had been purchased by petitioner on December 14, 1925, at a cost of $25,500, the receiver made

aggregate payments to petitioner of $17,893.76, allocating $17,500 of said amount to principal and $393.76 to interest.

The dates and amounts of dividends received during the year 1935 by petitioner on account of his claims represented by the five blocks of deposited bonds of the Southern Minnesota Joint Stock Land Bank were as follows (no dividends were received on these bonds during the years 1934 and 1936):

| Date acquired | Par value | Cost of bonds | Dividend received Feb. 12, 1935 | Dividend received Oct. 17, 1935 | Excess of dividends over cost |
|---|---|---|---|---|---|
| Jan. 10, 1922 | $25,000 | $25,562.50 | $5,000 | $2,500 | None |
| Feb. 28, 1922 | 25,000 | 25,250.00 | 5,000 | 2,500 | None |
| Dec. 28, 1922 | 10,000 | 10,150.00 | 2,000 | 1,000 | None |
| Mar. 10, 1923 | 10,000 | 10,137.50 | 2,000 | 1,000 | None |
| Jan. 22, 1933 | 170,000 | 23,800.00 | 34,000 | 17,000 | $27,200 |

Dividend payments received in the years 1934 to 1936, inclusive, resulted in gains as follows:

1934 _____ $30,775.23
1935 _____ 116,075.23
1936 _____ 29,625.07

(The last paragraph is copied verbatim from petitioner's brief and the figures correspond to those shown in the notice of deficiency. We have therefore adopted it as a fact, assuming that the parties intended to include it in their stipulation though they did not do so.)

The respondent has treated the gains as ordinary income, taxable in full. Petitioner claims: (1) That the gains are wholly exempt from Federal income tax; (2) that if they are subject to such tax they should be taxed as capital gains; and (3) that in computing his income tax for each of the years 1935 and 1936 the Commissioner has included, in his gross income, tax-free or tax-exempt interest. These contentions will be considered in the order stated.

Petitioner, upon brief, placed his chief reliance upon *Stewart* v. *United States*, 106 Fed. (2d) 405, which held that section 26 of the Federal Farm Loan Act, under which the bonds had been issued, exempted from Federal income tax the gains or profits derived from purchasing and selling such bonds as well as the interest received on them. The Board, several members dissenting, reached a contrary view in *Agricultural Securities Corporation*, 39 B. T. A. 1103 (on appeal C. C. A., 9th Cir.). The Circuit Court of Appeals for the Eighth Circuit, in *Stern Brothers & Co.* v. *Commissioner*, 108 Fed. (2d) 309, affirmed the holding of the Board, which had been entered as a memorandum decision upon the authority of the *Agricultural Securities Corporation* case, and the Supreme Court

granted certiorari in the *Stewart* and *Stern* cases. Under date of November 12, 1940, the Supreme Court held that only interest upon such bonds is exempt. *United States* v. *Stewart*, 311 U. S. 60. A similar holding must be made in the instant proceeding. The Commissioner committed no error in including the gains and profits upon the bonds—other than interest—in petitioner's gross income.

Did the gains constitute ordinary income or were they capital gains subject to the limitations of section 117 of the Revenue Acts of 1934 and 1936? The act (sec. 117 (b)) defines capital assets as "property held by the taxpayer", not including stock in trade, property of a kind which would be included in inventory if on hand at the close of the year, or property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business. Apparently respondent does not contend that the bonds purchased by petitioner were not capital assets, his contention being that the bonds had been delivered to the receivers "to evidence petitioner's claims to payment of said bonds"; that certificates "in a form suitable for assignment and transfer" had been delivered to him; that he continued to own the certificates during the taxable years; and that "there is no evidence that any of these certificates have been disposed of, cancelled, withdrawn from circulation, or otherwise affected and it must be assumed, therefore, that at all times material to this proceeding they were owned by petitioner as a bondholder * * * and represented all of his rights and claims under his bonds."

Prior to the enactment of the Revenue Act of 1934 the courts and this Board uniformly held that discharge of a bond by payment did not constitute a sale or an exchange as such words were used in the section of the revenue acts dealing with capital gains and losses. As pointed out in *John H. Watson, Jr.*, 27 B. T. A. 463, 465 (approved *Fairbanks* v. *United States*, 306 U. S. 436), it was "merely the payment of an obligation according to its fixed terms." Cf. *Felin* v. *Kyle*, 102 Fed. (2d) 349; *Arthur E. Braun, Trustee*, 29 B. T. A. 1161. It was therefore held that any gain resulting from such payment was to be treated as ordinary income and any loss was deductible as a bad debt. *Commonwealth Commercial State Bank* v. *Lucas*, 41 Fed. (2d) 111; *Pacific National Bank of Seattle* v. *Commissioner*, 91 Fed. (2d) 103. Congress, evidently aware of this interpretation, in 1934 enacted section 117 (f) providing:

SEC. 117. CAPITAL GAINS AND LOSSES.

\*        \*        \*        \*        \*        \*        \*

(f) RETIREMENT OF BONDS, ETC.—For the purposes of this title, amounts received by the holder upon the retirement of bonds, debentures, notes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor.

The gist of respondent's argument is that there has been no "retirement" of the bonds owned by petitioner and hence the above section is not applicable. This is in substantial accord with his statement in the deficiency notice—"The distributions received by the holder of bonds of a corporation which is in process of final liquidation are not considered amounts received upon the retirement of bonds as contemplated by section 117 (f) of the Revenue Act of 1934."

Upon brief both parties discuss *S. C. Thomson*, 40 B. T. A. 60. In that case the Board upheld the Commissioner's determination that the payment of $5 to debenture holders for each $1,000 face amount of the debentures held by them, the receivers having been authorized to pay such amount to those who would surrender their debentures with all coupons attached before a fixed time, constituted a "retirement" within the purview of section 117 (f), *supra*. The Court of Appeals for the Second Circuit reversed, holding that the case was one of bad debt. *Thomson* v. *Commissioner*, 108 Fed. (2d) 642. The Supreme Court reversed the holding of the Circuit Court, pointing out that it was "plain that Congress intended by the new subsection (f) to take out of the bad debt provision certain transactions and to place them in the category of capital gains and losses." *McClain* v. *Commissioner*, and *Helvering* v. *Thomson*, 311 U. S. 527. By a parity of reasoning, Congress also intended to take out of the ordinary income provisions of the revenue act, gains realized by a taxpayer "upon the retirement of bonds." The first question to be determined, therefore, is whether under the stipulated facts petitioner's bonds were retired.

In the *McClain* and *Thomson* case, *supra*, the Court stated: "The statute does not use the word [retirement] in an unusual or artificial sense. In common understanding and according to dictionary definition the word 'retirement' is broader in scope than 'redemption'; is not, as contended, synonymous with the latter, but includes it. Nothing in the legislative history of the provision requires us to attribute to the term used a meaning narrower than its accepted meaning in common speech."

Respondent sums up his argument on this phase of the case in the following language: "Where, as here, petitioner merely received payments on account of his obligations with the balance still remaining due and owing, the bonds being in public circulation, available for public assignment and transfer and petitioner retaining all rights thereunder, no retirement occurred." The latter part of the statement is only partially true. Petitioner, as the owner of the bonds, of course retained his rights under them. It must be kept in mind, however, that the bonds were in default. In addition the obligors, having failed to meet their outstanding obligations, had been de-

clared to be "insolvent" and receivers had been appointed under section 29 of the Federal Farm Loan Act. (U. S. C. A., Title XII, ¶ 961.) It was the duty of the receivers to pay off or retire all of the obligations of the banks, including the bonds which had been issued, and they did so, during the taxable years, through dividends, "distributed"—in the language of the receiver's letter—"without preference or distinction as to series or maturities of bonds or preference as to principal and interest out of proceeds of pledged assets on the basis of all outstanding bonds with unmatured interest accrued thereon, at the rates carried by the several issues of bonds, up to and including [in connection with the Chicago bonds] September 30, 1932."

It is obvious that the receivers were retiring the bonds as rapidly as possible. 203/290 of the face amount of the bonds owned by petitioner was paid to him. In "common speech" the bonds were partially retired. The statute (sec. 117 (f), *supra*) does not require that the bonds be wholly retired. "Amounts received by the holder upon the retirement of bonds * * * shall be considered as amounts received in exchange therefor." Being of the opinion that the stipulated amounts were received by this petitioner "upon the retirement" of his bonds, we hold that the gains realized by him are to be taxed as capital gains.

Petitioner's third contention is unsound. This issue involves only the Chicago bonds, having an aggregate par value of $290,000, which petitioner purchased on January 21, 1933. The bonds which he owned while the interest was accruing—$25,000 face amount purchased December 14, 1925—and the interest thereon are not in dispute. The pertinent facts, it will be recalled, are: Bonds of the par value of $290,000, having accrued interest amounting to $6,227.12, were purchased by him on January 21, 1933, at a total cost of $58,100. During the taxable years he received payments aggregating $207,358.98, $203,000 of which the receiver allocated to principal and $4,358.98 of which he allocated to the accrued interest.

It is immaterial that the receiver allocated a portion of the amount to interest. It was not interest to petitioner but a gain upon his capital investment. Cf. *Erskine Hewitt*, 30 B. T. A. 962; *Drier* v. *Helvering*, 72 Fed. (2d) 76; *L. A. Thomson Scenic Railway Co.*, 9 B. T. A. 1203; *Harr* v. *MacLaughlin*, 20 Fed. Supp. 27; affd., 99 Fed. (2d) 638. In other words, petitioner invested $58,100 in bonds and matured interest and received during the taxable years the whole of his investment and a profit of $149,258.98. The gain is includable in his gross income. *United States* v. *Stewart, supra*.

The stipulation states that on July 17, 1939, petitioner paid the collector $23,000 on account of the deficiencies and that said sum was assessed by the Commissioner. The notice of the deficiencies was

mailed on January 31, 1939. It, as pointed out in the opening paragraph of this opinion, shows an overassessment of $2,330.78 for the year 1934. Appropriate adjustments will no doubt be agreed upon by the parties in recomputing the deficiencies in accordance with the views herein expressed.

*Decision will be entered under Rule 50.*