## FEDERAL CROP INS. CORPORATION v. THOMPSON.

### No. 14011.

Court of Civil Appeals of Texas. Dallas.
April 29, 1949.

Frank B. Potter, Fort Worth, and Wm. P. Fonville, of Dallas, for appellant.

Crisp & Bankhead, of Kaufman, for appellee.

CRAMER, Justice.

### Facts

This case was submitted to the trial court on an agreed statement of facts, the material parts of which were in substance

as follows: (1) On March 6, 1946, George Phillips, owner of the land, intended to plant, cultivate and harvest the entire cotton crop himself; (2) made application to the Federal Crop Insurance Corporation on two farms, one of 28.7 acres and one of 27 acres. (3) On March 8th George Phillips executed and delivered to appellant his note for premiums due under the contract of insurance applied for (the principal of said note to be calculated as set out in the contract). On April 3rd appellant accepted the application. Thereafter appellee became and was the tenant of George Phillips and planted, cultivated and harvested the entire cotton crop on both farms, on (6) the usual rental contract ($\frac{1}{4}$ to landlord and $\frac{3}{4}$ to tenant). (7) The loss under the insurance contract was 5853 pounds. (10) The price of cotton April 19, 1948, was $.3640. (13) George Phillips made claim for his $\frac{1}{4}$, or 1097.5 pounds of cotton, and he was paid. (14-15) On July 26, 1946, George Phillips filed with the Federal Crop Insurance Corporation record of transfer, on each of said farm tracts, of all his interest in all acres of both farms. (16-17) On October 3rd George Phillips filed with appellant transfers for 75% of the acres in the two tracts. (18) Appellee's claim made January 27, 1947, for 75% of the loss under the insurance contract of George Phillips was rejected by appellant on April 30, 1947. (20) That the cotton crop insurance regulations were published in the Federal Registry on November 24, 1946, in Vol. II, sec. 230, at page 14,355. (21) That during the growing season and after harvesting the 1946 cotton crop, Roy W. Moody and I. L. Moody, crop insurance adjustors of defendant, made inspection of the cotton crops growing on the two tracts and made reports signed by themselves and appellee, showing appellee as having a 75% insured percentage in such crops. The adjustors' report was made to appellee's percentage in said crops based upon the statements of appellee and George Phillips that such was appellee's percentage. (22) On April 15, 1946, appellee, in company with George Phillips, called at the office of the County Agriculture Conservation Committee of Kaufman County and inquired of Sam. J. Venner, a committee clerk, if the 1946 cotton crops of George Phillips on the two tracts involved here were insured. Sam Venner stated to appellee that the crops were insured. Appellee asked Mr. Venner if $\frac{3}{4}$ of the crop insurance could be transferred to appellee. Venner stated to appellee that such transfer could be made. Venner was not aware, on the occasion of that statement, as to what interest in such crops was, or would be, owned by whom. (23) The expiration date of indemnity certificate on losses on 1946 cotton crops expired August 15, 1947, or 30 days after the issuance of the certificate, whichever was later. Appellee has never received such an indemnity certificate. Paragraphs 8 to 12 inclusive pertain to measure of damages and will be referred to later herein.

The court, on such agreements, entered judgment for appellee, and against appellant for $1747.22, with interest at 6% per annum from April 19, 1948, plus costs, and this appeal has been properly perfected from that judgment.

## Opinion

The contract between the government agency, Federal Crop Insurance Corporation, and appellee is contained in the application and the Cotton Crop Insurance Regulations, of appellant, covering the year involved here and subject to the limited authority of the agents of appellant thereunder. As stated by Justice Frankfurter in Federal Crop Ins. Corp. v. Merrill et al, 332 U.S. 380, 68 S.Ct. 1, 2, 92 L.Ed. 10, 175 A.L.R. 1075: "(1-4) The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private,

depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e. g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40, and see, generally, In re Floyd Acceptances, 7 Wall 666, 19 L.Ed. 169."

The application for insurance contained the following provision: "The undersigned (George Phillips) * * * hereby applies to the Federal Crop Insurance Corporation * * * for insurance to cover his interest as landlord, owner, tenant or sharecropper in American Upland Cotton crops to be planted on all insurance units located in (Kaufman County, Texas) in which the applicant has an interest at the time of planting." Section 419.2 of Cotton Crop Insurance Regulations for the Year 1946 and Succeeding Crop Years, Federal Register, November 24, 1946, Vol. II, Section 230, p. 14,355, provides: "An application (for insurance) shall cover the applicant's interest in the cotton crop on all insurance units located * * * in the county * * * in which the applicant has an interest at the time of the planting of the cotton crop to be harvested in 1946 and any succeeding crop year while the contract remains in force." Under the agreed statement of facts, "at the time of planting" George Phillips owned ¼ of the crops, under the regulations and the terms of the lease.

In the Merrill case cited above, the rule that these regulations are binding is discussed as follows: "Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it. Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government. And so Congress has legislated in this instance, as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy. See § 516(b), 52 Stat. 72, 77, 7 U.S.C. § 1516(b), 7 U.S.C.A. § 1516(b). Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307, 44 U.S.C.A. § 307"; and as follows: "The oft-quoted observation in Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury. The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government."

See also Felder v. Federal Crop Ins. Corp., 4 Cir., 146 F.2d 638.

Appellee says that his acquisition of a ¾ interest in the 1946 cotton crop on the farms of George Phillips and his filing of a record of transfer to him, entitled him to the benefits of the contract between appellant and George Phillips, landlord, and also that he acquired at least a ¼ of the landlord George Phillips's ¼, or 1⁄16th of the cotton, since George Phillips had the right to transfer such portion as he owned at the time of the planting.

The material part of the "Record of Transfer" attached to the agreed statement of facts, one covering each farm, reads as follows: " * * * George Phillips of Route 3, Kaufman, Texas, transferred 75% of his interest in 28.0 acres of the above-mentioned crop on the above-mentioned farm covered by the above-mentioned insurance contract to C. E. Thompson of Route 3, Kaufman, Texas * * *." Appellant was not a named applicant for insurance. Under the application, the interest insured was the applicant George Phillips's interest at the time of planting. This is the plain meaning and wording of the application and the regulation. George Phillips, the insured, transferred, on appellant's form, filed with the appellant's agent, "75% of his interest." Since his interest was ¼ of the cotton, it is plain that appellee acquired ¾ of ¼ of the insurance due George Phillips, the insured. The amount of insurance shown by the record to be due appellee is based on 1463.25 pounds of cotton. Section 419.19(b) of the Regulations provides: "In case of a cash settlement under a certificate of indemnity, the cash equivalent of the indemnity shall be the number of pounds of cotton specified in the certificate of indemnity multiplied by the cash equivalent price per pound for the day the certificate of indemnity or other request of the insured for cash settlement or for determining the cash equivalent is received in the branch office of the Corporation * * *." The certificate of indemnity and appellee's claim was refused by appellant on April 30, 1947.

The measure of damage applied by the trial court was the highest reasonable cash market value of cotton between the time the amount became due and the time of trial. Appellee assigns error to this as a proper measure of damage. The rule laid down in Randon v. Barton, 4 Tex. 289, is that where the damages are for breach of contract to convey chattels, where the purchase price is paid, the measure of damages is the value of the article at time of trial, which was the test applied by the trial court. This rule was modified in Heilbroner v. Douglass, 45 Tex. 402, at page 407, where it was held that it is inequitable to allow highest price of an article after default in delivery; measure of damage is the value at time agreed for delivery, with interest.

We have carefully considered this record and have concluded that the correct measure of damage in this case is the one set out in the Heilbroner case above. It follows that the judgment of the trial court should be modified so as to reduce the recovery from $1,747.22 to $299.60, with interest thereon from April 30, 1947, the date appellant refused the claim. For general discussion of damages here, see 3 Texas Law Review 44.

For the reasons above stated, the costs of appeal are taxed one-third against appellant and two-thirds against appellee. The judgment as modified is affirmed.