**NEW ORLEANS STEAMSHIP ASSO-
CIATION, Appellant,**

v.

**GENERAL LONGSHORE WORKERS,
I. L. A. LOCAL UNION #1418
et al., Appellees.**

No. 24738.

United States Court of Appeals
Fifth Circuit.

Jan. 26, 1968.

Rehearing Denied March 12, 1968.

Samuel Lang, Andrew C. Partee, Jr.,
Kullman & Lang, New Orleans, La., for
appellant.

Victor H. Hess, Jr., Alvin J. Liska,
New Orleans, La., for appellees.

Before GEWIN, BELL and AINS-
WORTH, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellant New Orleans Steamship
Association appeals from an order dis-
missing its complaint which in substance
amounted to a request for a mandatory
injunction to enforce an arbitration
award. The award directed two local
unions, the appellees, and their members
to cease and desist work stoppages in
violation of a collective bargaining agree-
ment. The District Court was of the
view that enforcement of such an order
by a federal court was barred by the
Norris–LaGuardia Act, 29 U.S.C.A. §
104.[1] We reverse.

Appellant is an association represent-
ing various employers who employ long-
shoremen for the loading and unloading
of cargo in the port of New Orleans.

---

1. 29 U.S.C.A. § 104:

"No court of the United States shall
have jurisdiction to issue any restrain-
ing order or temporary or permanent
injunction in any case involving or
growing out of any labor dispute to
prohibit any person or persons partici-
pating or interested in such dispute (as
these terms are herein defined) from
doing, whether singly or in concert, any
of the following acts:

"(a) Ceasing or refusing to perform
any work or to remain in any relation
of employments;"

These longshoremen are members of and are represented by appellee unions. Appellant and the unions are signatories to a collective bargaining agreement. The parts of the agreement which are involved in this dispute are a no strike clause, an arbitration clause, and a clause empowering the arbitrator to issue a desist order. They provide in pertinent part:

"(a) *No Strikes—No Lockouts*

"There shall be no strikes, work stoppages, nor shall there be any lockouts.

"(b) *Disputes Procedure and Arbitration*

"The parties accept the principle that any dispute involving the interpretation or application of the terms of this agreement shall be resolved in an orderly and expeditious manner. They commit themselves to the procedure outlined below. Failure by either party to staff and maintain the permanent disputes committee provided for herein and failure to deal with disputes under the disputes procedure shall constitute a violation of this agreement.

"(c) These steps shall be followed to insure prompt resolution of disputes:

"Step 1. When a problem arises it shall be discussed immediately between the appropriate representatives of the employer and local union involved; if they are unable to reach a satisfactory settlement, either side may request immediate referral of the matter to Step 2. As soon as such request is made known each party shall notify its representatives on the permanent disputes committee.

"Step 2. There shall be established a permanent disputes committee consisting of two representatives of the Association and the presidents of Locals 1418 and 1419. Each member shall have a designated alternate who shall serve in the event a member is unavailable. If the matter is not disposed of in this Step 2 within forty-eight (48) hours of the origin of the dispute, or within such additional time mutually agreed upon, either party may take the dispute to final and binding arbitration."

\* \* \* \* \* \*

"(d) Either party to a dispute may by-pass the procedure leading up to arbitration and obtain arbitration forthwith whenever a violation of sections (a) and/or (b) of this Article shall be alleged. In this event, a notice of such allegation shall be made by telegram to the other party and to the arbitrator. The arbitrator shall hold a prompt hearing within seventy-two (72) hours after receipt of the notice and shall render an award within twelve (12) hours after the hearing. In such case, the arbitrator shall make findings of fact concerning the alleged violation and shall prescribe appropriate relief, including an order to desist therefrom."

The arbitrator in this matter served by virtue of his inclusion on a panel of six permanent arbitrators selected by the parties to serve for the duration of the agreement. On October 5, 1965 appellant notified the arbitrator that appellees had engaged in work stoppages and requested a hearing within 72 hours as provided in the agreement, Article XVIII, § (d), supra. A four day hearing was held commencing on October 8, 1965. The award was entered on December 13, 1965. The arbitrator found that stoppages had occurred in violation of the contract and sustained appellant's grievance. He directed appellees, their officers, agents, representatives and members to " \* \* \* cease and desist from work stoppages in violation of their contract \* \* \* "

Alleging that work stoppages had occurred subsequent to this award, appellant sought relief in the District Court in March 1966 in the form of an order enforcing the award of the arbitrator. The District Court dismissed the complaint, relying on the Norris-LaGuardia Act, supra, and the cases of Sinclair Refining Co. v. Atkinson, 1962, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440; and Gulf & South American Steamship Co.,

Inc. v. National Maritime Union of America, AFL–CIO, 5 Cir., 1966, 360 F.2d 63.

The court erred in its interpretation of our *Gulf & South American Steamship* case. Our holding there was that the arbitrator exceeded his jurisdiction in making the award and thus there could be no judicial enforcement of the award. We did not reach the question presented here. We held, as had the District Court that Sinclair Refining Company v. Atkinson, supra, was direct authority on the question and controlling. Absent jurisdiction in the arbitrator, the case was nothing more than an effort to obtain a federal injunction to enjoin a work stoppage arising out of a labor dispute.

Our decision here turns on a construction of the *Sinclair* holding. That case did not involve an arbitration award. It involved an effort to obtain an injunction to enforce a no strike clause where strikes were ensuing but where there had been no arbitration. The Supreme Court has not considered the precise question with which we are now concerned. Nevertheless, the sweep of *Sinclair* is broad; the Norris-LaGuardia Act is treated as all encompassing despite § 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185, and the congressional and national policy enunciated in Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and the *Steelworkers Triology*,[2] fostering the arbitration process.

■ The court stated in Textile Workers Union of America v. Lincoln Mills, supra, that the agreement of the employer to arbitrate disputes is the *quid pro quo* for the agreement not to strike. These cases and their progeny now make it settled law that federal courts can compel parties to collective bargaining agreements to carry out their agreements to arbitrate. The court alluded to this in *Sinclair* but stated that such injunctive orders do not conflict with the matters (strikes, work stoppages, and picketing) over which federal courts were deprived of jurisdiction by the Norris-LaGuardia Act.

Meanwhile it has become commonplace for federal courts to enforce arbitration awards by mandatory injunction where matters other than strikes, work stoppages or picketing are involved. See e. g., Minute Maid Co. v. Citrus, Cannery, Food Processing and Allied Workers, Drivers, Warehousemen and Helpers, Local Union #444, 5 Cir., 1964, 331 F.2d 280, 281; Fontainebleau Hotel Corp. v. Hotel Employees' Union Local 255, 5 Cir., 1964, 328 F.2d 310.

In sum the situation to date is that arbitration is encouraged; it may be compelled where the parties have contractually adopted such a procedure. And the award may be judicially enforced up to the point of those matters proscribed by Norris-LaGuardia.

■ The question presented now is the power of the District Court to enforce the award of an arbitrator in a setting where the arbitrator, in the exercise of undisputed contractual jurisdiction, has ordered an end to work stoppages. The union has refused to abide by his order and asserts that the court is without jurisdiction to remedy the breach. Practically, this is the ultimate or last step in the arbitration process. The agreement between the parties is valid and the authority of the arbitrator over the subject matter and to enter a desist order is not disputed. We can assume, *arguendo*, that the employer agreed to arbitrate grievances in return for the no work stoppage clause. Does *Sinclair* foreclose relief to the employer? We hold that it does not.

The question was before the court in International Longshoremen's Assn. v.

2. United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior and Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

Philadelphia Marine Trade Association, 1967, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed. 2d 236, but was not reached due to the impreciseness of the injunctive order involved. Justice Douglas, concurring in part and dissenting in part in that case, forecast the problem which the *Sinclair* holding poses in the situation here present where we must accommodate, if possible, two national policies: The proscription of Norris-LaGuardia in labor disputes and the use of arbitration to avoid labor disputes. He considered *Sinclair*, where there had been no arbitration, distinguishable from a case where the arbitration award, as here, is frustrated through a refusal to abide by the decision of the arbitrator.[3] Our approach is to distinguish *Sinclair* on this same basis and on the more than semantical ground that there is a real difference between an ordinary injunction and an order enforcing the award of an arbitrator although the end result is the same.

In this case the parties agreed to the remedy of a desist order by the arbitrator. Such an order was entered and breached. The court in enforcing such order or award, although injunctive in nature, would be doing no more than enforcing the agreement of the parties. This not unusual action on the part of a court will lie unless the court has been deprived of jurisdiction by the Norris-LaGuardia Act.

Norris-LaGuardia is limited to labor disputes and we consider the instant controversy to be outside the scope of a labor dispute as such. We have before us a contract wherein the parties have ceded their remedy of self-help in a labor dispute to arbitration even to the point of permitting the arbitrator to grant a desist order. Once the arbitration was completed, the matter became ripe for specific performance and fell outside the scope of Norris-LaGuardia.

We think the logic of the arbitration policy compels this result; otherwise one of the parties to a collective bargaining agreement containing arbitration and no strike or work stoppage clauses has a hollow right indeed. He is told: Our national policy is to encourage arbitration; you may contract to arbitrate and obtain a no strike clause as the *quid pro quo* for your agreement to arbitrate; a recalcitrant party will be compelled to arbitrate any dispute arising therefrom; and the arbitrator may be empowered contractually to issue a desist order. We do not believe in light of the body of law which has grown from § 301 that the law will now say to this party that, having done these things, there is no remedy in the event the opposite party decides to ignore the award of the arbitrator to desist the stoppage. No such result should be imputed to Congress; the Supreme Court did not go so far in *Sinclair*.

■ Our judgment is that the Norris-LaGuardia Act and arbitration under the auspices of § 301 of the Labor-Management Relations Act, construed *in pari materia*, can be meaningfully accommodated. They relate to the same subject matter—labor relations—and they should be construed together. Cf. United States v. Stewart, 1940, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40. Each has its place in the labor relations

---

3. At least one state court has considered the same issue. The New York Court of Appeals "confirmed" an award of an arbitrator enjoining a union from violating a no slow down clause of a collective bargaining agreement. This was found despite a New York statute modeled after the Norris-LaGuardia Act. The court reasoned:

"* * * Section 876-2, like its prototype the Federal Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., was the result of union resentment against the issuance of injunctions in labor strifes. But arbitration is voluntary and there is no reason why unions and employers should deny such powers to the special tribunals they themselves create. Section 876-a and article 84 (Arbitration) are both in our Civil Practice Act. Each represents a separate public policy and by affirming here we harmonize those two policies." Ruppert v. Egelhofer, 1958, 3 N.Y.2d 576, 170 N.Y.S.2d 785, 148 N.E.2d 129, 70 A.L.R.2d 1048.

arena; the vitality of Norris-LaGuardia is in no wise diminished by the judicial enforcement of the award of an arbitrator made pursuant to a contract.

The District Court had jurisdiction under these circumstances to enforce the award of the arbitrator and erred in dismissing the complaint.

Reversed and remanded for further proceedings not inconsistent herewith.