Edward J. WARREN et al., Plaintiffs,

v.

NORMAN REALTY COMPANY et al., Defendants.

Civ. No. 73-0-309.

United States District Court,
D. Nebraska.

May 2, 1974.

DENNEY, District Judge.

This matter comes before the Court upon defendants' motions to dismiss. [Filings #36, 37, 39].[1]

On September 11, 1971, plaintiff, TSGT Edward Warren, a member of the Air Force, was assigned to Offutt Air Force Base. On September 14, 1971, Warren was directed by the Housing Service of Offutt to the defendant, Norman Realty Company, for location of housing. Through Norman Realty, a single family house was found in Millard, Nebraska, a community near Offutt, and on that same date a year lease was negotiated. The lease was signed by the plaintiffs and by Norman Realty on behalf of the owner, defendant McFadden.

Thereafter, plaintiffs moved into the home and paid Norman Realty $112.00 as rent for the period September 14, 1971 to September 30, 1971, and a $210.-00 damage deposit. On September 17, 1971, defendant Hugh I. Abrahamson, an agent of Norman Realty, notified the Housing Service that the owner had changed her mind, was breaching the lease and would evict the plaintiffs. On September 20, 1971, Abrahamson confirmed the eviction by letter. On September 24, 1971, McFadden appeared personally at the residence and told plaintiffs that their occupation of the house would reduce property values and cause the neighbors to move. In these circumstances, plaintiffs did vacate the premises and were forced to find other housing. Plaintiffs are black in skin color and believe these actions of Norman Realty, Abrahamson and McFadden were motivated by racial discrimination.

W. Edward Thompson, Omaha, Neb., for plaintiffs.

Steven J. Riekes, Omaha, Neb., for defendants, Norman Realty Co. and Hugh I. Abrahamson.

Larry R. Demerath, Omaha, Neb., for defendant Delores McFadden.

Stephen Muehlberg, Asst. U. S. Atty., D. Neb., for defendant James Schlesinger.

TSGT Warren brought the matter to the attention of his superior officers at Offutt and thereafter, on numerous occasions, attempted to get relief through command channels. On February 8, 1972, upset with his lack of success and the fact that some of the discussions he

---

1. The Court will grant plaintiffs' motion to file an amended complaint, a copy of which has been furnished to the Court, instanter, and will consider the motions as they relate to the complaint as amended.

had had with a legal officer had been communicated back to his commanding officer, TSGT Warren told his commander that he was withdrawing his complaint from the Air Force and going directly to Federal Court. He asked for the coming Friday off for that purpose and it was granted. It is not clear to the Court why the complaint was not actually filed in Federal Court until July 3, 1973, some seventeen months later. It is not alleged that the delay was in any way caused by the defendants.

In this suit, the plaintiffs allege that the aforementioned acts of the defendants amount to racial discrimination in housing in contravention of the Fair Housing Act of 1968, 42 U.S.C. §§ 3610, 3612 and the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, 1983 and 1985.[2] It is the defendants' contention that the suit is barred by the statute of limitations.

THE FAIR HOUSING ACT OF 1968

The Fair Housing Act of 1968 provides two methods of seeking relief and, although there has been much litigation over the question, it now appears settled that these are alternative methods. Crim v. Glover, 338 F.Supp. 823 [S.D. Ohio 1972]. These two methods are found in 42 U.S.C. § 3610 and § 3612.

As applicable to this case[3], § 3610 is an administrative process whereby a claim is first filed with the Secretary of Housing and Urban Development. Then the Secretary refers the complaint to the analogous State agency

If the local agency takes action within thirty days, the Secretary must then hold up his own action and must continue to do so as long as the local proceedings are carried forward with reasonable promptness. If the local proceedings are not carried forward with reasonable promptness, or the Secretary is not satisfied with their conclusion, he may certify that the protection of the rights of the parties or the interest of justice requires further action. The Secretary then may seek voluntary compliance. If voluntary compliance is not obtained within thirty days, then the claimant, within an additional thirty days, may institute suit in the appropriate United States District Court. The limitation on § 3610 is that the complaint must be filed with the Secretary within 180 days after the alleged discriminatory housing practice occurred. Brown v. Lo Duca, 307 F.Supp. 102 [E. D.Wisc.1969].

The plaintiffs contend that filing the complaint with the Air Force authorities was compliance with the filing with the Secretary requirement for the purposes of § 3610. The Court is not so persuaded. This is not a Love v. Pullman Co., 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 [1972] case, where the complainant has filed first with the federal agency charged with enforcing the law, only to find that he should have gone to the analogous State agency before the federal. This is similar to a case where an employee of a federal agency has filed a housing discrimination complaint with his own agency instead of with the Secretary of Housing and Urban Development and claims in a subsequent federal suit that § 3610 has been satisfied. The language of § 3610 is clear. Plaintiffs need not elect the administrative process at all, but if they do so they must file with the Secretary of Housing and Urban Development. Crim v. Glover, *supra*. Having not done so within the 180 days allowed, the Court finds plaintiffs barred under § 3610.

Although § 3612 does allow a claimant to come directly into federal court with his housing discrimination

---

2. Several other statutory grounds for the suit are asserted by the plaintiffs including certain Air Force Regulations. The Court can find no basis in law for those additional grounds. All parties have most vigorously contested the above enumerated statutes.

3. The local referral provisions of § 3610 are applicable because Nebraska has provided the State machinery for prohibition of and relief from discriminatory housing practices. § 20–105 et seq., Neb.Rev.Stat. Reissue 1970.

claim, without resort to any administrative process, it similarly requires that a complaint be filed within 180 days of the date that the discriminatory practice occurred. James v. Hafler, 320 F.Supp. 397 [N.D.Ga.1970]. In this regard, plaintiffs argue that the doctrine of paramount authority should be applied to toll the statute. The Court finds no merit in this argument but, assuming arguendo that seeking relief through command channels is somehow within the doctrine, then at least the 180 days began to run when plaintiff affirmatively withdrew his complaint from those command channels and stated he was going to federal court. That having occurred on February 8, 1972, the 180 days had long expired by July 3, 1973, the date of filing of the complaint. The Court finds that the complaint is barred under § 3612.

### THE CIVIL RIGHTS
### ACT OF 1866

██ The more difficult questions are presented under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, 1983 and 1985, as alleged herein. The question is what effect the Fair Housing Act of 1968 had on those statutes. Initially, the Supreme Court seemed to say that there was no effect at all. Jones v. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 [1968]. However, upon further consideration, the Supreme Court directed that the two Acts should be read together. Hunter v. Erickson, 393 U.S. 385, 89 S.Ct. 557, 21 L.Ed.2d 616 [1969]. Reading them together, the only rational construction can be that where any discriminatory practice is within both the Fair Housing Act of 1968 and the Civil Rights Act of 1866, the Court should consider and apply the limitations of the specific act, the Fair Housing Act, to the general act, the Civil Rights Act. Wright v. Kaine Realty, 352 F.Supp. 222 [N.D.Ill.1972]. United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 [1940]. Applying this rule, the 180 day limitation of the Federal Housing Act would bar the suit under the statutes of the Civil Rights Act of 1866 alleged as well.[4]

This case should be distinguished from such cases as those under 42 U.S.C. § 2000e of the 1964 Civil Rights Act. There, Congress in the latter specific legislation created only an administrative scheme without providing for direct suit as an alternative. Thus, it is understandable that courts have been reluctant to find any implied limitations on claimants' rights to direct judicial relief under the Civil Rights Act of 1866. See, e. g., Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476 [7th Cir. 1970]. That is not the case here. Congress, in the Federal Housing Act of 1968, provided for both administrative and direct judicial relief. Any construction other than that described by the Court herein would render a nullity the intent and effort of Congress in enacting the comprehensive measures of the Fair Housing Act. This does not mean that Congress should not reconsider placing such a short statute of limitations on the direct judicial relief section, § 3612. There is value in the 180 day limit for the administrative section § 3610, since voluntary compliance is the purpose and that may be impossible if the complaint is not quickly filed. That value is not present where

---

4. Defendants also argue that this result should be reached by applying the rule that the analogous State statute of limitations should be applied to a suit under the Civil Rights Act of 1866. See, e. g., Johnson v. Dailey, 479 F.2d 86 [8th Cir. 1973]. Since Nebraska has a specific statute on housing discrimination, its statute would be the one applicable. That statute is § 20–119, Neb. Rev.Stat. Reissue 1970, and it contains a 180 day limit. The Court finds the better view of the interworking of these statutes to be expressed above. The Court should also note that as to certain specific portions of the 1866 statute plaintiffs have failed to state a claim for additional reasons to those expressed above. For example, plaintiffs have failed to meet the color of State law requirement of § 1983 and the allegations of conspiracy for § 1985 are insufficient. Barnes v. Dorsey, 480 F.2d 1057 [8th Cir. 1973].

direct judicial relief is sought. At that point, restoration to the property by voluntary compliance is long since inappropriate and money damages is the only realistic relief. The tragedy of this short statute is personified by this case where the 180 days operates to cut off the plaintiffs from presenting the merits of a case which is far from stale, and allows the defendants to escape the bar of justice.

For these reasons, an order dismissing this case will be entered this date.