Truman H. Newberry v. Commissioner. Estate of Harriet B. Newberry, Deceased, Truman H. Newberry, Executor v. Commissioner.
Truman v. Commissioner
Docket Nos. 4122, 4123.
United States Tax Court
1945 Tax Ct. Memo LEXIS 173; 4 T.C.M. (CCH) 576; T.C.M. (RIA) 45196; June 6, 1945
H. A. Mihills, C.P.A., and James Turner, Esq., for the petitioner. Philip M. Clark, Esq., for the respondent. SMITH
Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings involve income tax deficiencies for 1941 of $69,014.92 in the case of Truman H. Newberry (Docket No. 4122), and of $1,205.32 in the case of Estate of Harriet B. Newberry (Docket No. 4123). The questions in issue are: (1) Whether Truman H. Newberry sustained a deductible loss in 1941 upon an investment made in 1926 in Macomb County Nine Mile-Halfway Drain District 6 Percent Bonds which after protracted litigation were held to be void and, if so, whether the loss is an ordinary loss or a capital loss. (2) Whether the basis for computing gain or loss upon sales and redemptions in 1941 of various obligations of different political subdivisions of the State of Florida is the value at the date of receipt of substituted refunding bonds or the cost of the bonds originally purchased. (3) Whether Truman H. Newberry sustained a capital loss allowable for 1941 by reason of his then receiving payment of $180 on each $1,000 Oakland County, Michigan, Campbell Road and *175 Red Run Improvement District Bonds held by him in consideration for which the par of each bond was reduced to $700. The respondent has moved for an increase in the deficiency determined in Docket No. 4122 by reason of the fact that he erroneously allowed the deduction from gross income of a capital loss in respect of Newberry's investment in Macomb County Nine Mile-Halfway Drain District Bonds. Findings of Fact We adopt as our findings of fact the facts stipulated by the parties. Truman H. Newberry is a resident of Grosse Pointe Farms, Mich. He also is the executor of the estate of Harriet B. Newberry, his deceased wife, who died testate on January 18, 1943. The income tax returns of Newberry and of his deceased wife for 1941 were filed with the collector of internal revenue for the district of Michigan. Macomb County Nine Mile-Halfway Drain District 6 Percent Bonds On December 13, 1926, Newberry purchased $175,000 par value Macomb County Nine Mile-Halfway Drain District 6 Percent Bonds due May 1, 1933, with coupons for interest attached at a total cost of $179,656.05. The proceeds from the sale of these bonds were used by the Drain District to provide funds for the *176 construction of a sewer and a sewage disposal plant which were constructed purportedly pursuant to proceedings taken by the Macomb County Drain Commissiioner under Michigan statutes. Newberry received interest on these bonds until November 1, 1931. Interest coupons due May 1, 1932, and thereafter, were never paid. In 1931 the Township of Lake, Macomb County, Michigan, and a large number of individual landholders in Macomb County filed a bill of complaint in the Macomb County Circuit Court praying the court to declare the drain proceedings fraudulent and void and to restrain the assessment or reassessment and collection of taxes, the further construction of the sewer and purification plant, and for reimbursement of drain tax assessments paid by plaintiffs. The trial court denied the relief prayed for and an appeal was taken to the Supreme Court of Michigan, which rendered an opinion under date of March 2, 1932, that the project in question was not a drain as contemplated by the law under which it was constructed but was in fact a sewer; that the County Drain Commissioner had no jurisdiction to construct the project; and that the proceedings for the construction thereof were void *177 for want of jurisdiction. Township of Lake v. Millar, 257 Mich. 135; 241 N.W. 237. A bondholders' committee for the holders of bonds of the Nine Mile-Halfway Drain District was organized and on December 22, 1932, petitioner's bonds were deposited with the committee. On February 1, 1933, he received from the depositary a certificate of deposit for $175,000 par value of bonds. The bondholders' committee through Kenneth M. Keefe, and others, instituted proceedings in the District Court of the United States for the Eastern District of Michigan against the Nine Mile-Halfway Drain District, and others, to enforce collection of interest upon the bonds and the indebtedness represented thereby. In October, 1936, the petitioner sold certificates of deposit representing $75,000 par value Macomb County Nine Mile-Halfway Drain District Bonds for $30,322, which bonds had a cost to the petitioner of $76,995.83. On July 12, 1939, the United States District Court for the Eastern District of Michigan rendered an opinion holding that the bonds were valid obligations and the special assessments therefor enforceable and ordered the Drain District to enforce the collection *178 of taxes and pay the bonds. An appeal was taken from the court's decision to the United States Circuit Court of Appeals for the Sixth Circuit. On March 14, 1941, the Sixth Circuit rendered its opinion reversing the decision of the District Court. Bloomfield Village Drain District v. Keefe, 119 Fed. (2d) 157. On October 13, 1941, the Supreme Court of the United States denied a petition for writ of certiorari in the above case, 314 U.S. 650. On October 20, 1941, the United States Circuit Court of Appeals issued its mandate to the District Court reversing the decree of that court and dismissing the bill of complaint. The mandate was filed in the District Court on October 22, 1941. On March 30, 1942, the Supreme Court of the United States issued an order denying a petition for rehearing of plaintiff's petition for writ of certiorari in the above-entitled case, 315 U.S. 830. On April 22, 1941, Newberry paid to the bondholders' committee $1,000 assessed against him by the committee to cover his share of the expense incurred in the above-mentioned litigation. In his income tax return for 1941 Newberry claimed the deduction of a loss of $102,660.22 *179 representing the cost of $100,000 par value Macomb County Nine Mile-Halfway Drain District Bonds and the deduction of $1,000, the amount of the assessment by the bondholders' protective committee, paid by him in 1941. In his determination of the deficiency the respondent has held that the petitioner's investment in the bonds was $102,660.22 plus $1,000 expenses of litigation paid to the bondholders' protective committee in 1941, that the loss was a longterm capital loss, and has allowed the deduction of one-half thereof, namely, $51,830.11. By an amended answer the respondent claims that the deduction of this amount was erroneously allowed. City of Dunedin, Florida, Series "O" Refunding Bonds On March 1, 1929, Newberry purchased $128,000 par value City of Dunedin, Florida, Series "O" Refunding Bonds dated July 1, 1928, maturing July 1, 1938, at a cost of $125,184. Newberry received interest on these bonds until January 1, 1931, when the first default occurred. A bondholders' protective committee was organized during 1931 to represent the holders of bonds of the City of Dunedin, Florida, of which committee Newberry was a member. Newberry deposited his bonds with this committee *180 on November 27, 1931, and received in exchange therefor certificate of deposit #3. On September 21, 1937, an agreement was entered into between the City of Dunedin and the bondholders' protective committee whereby the bonds were to be substituted by bonds bearing a lower rate of interest maturing January 1, 1973. The City of Dunedin 1938 Refunding Bonds were validated and confirmed by the final decree of the Circuit Court of the Sixth Judicial Circuit of the State of Florida on February 19, 1938. On April 14, 1938, the City of Dunedin delivered its 1938 Refunding Bonds to the appointed agency to be exchanged for Series "O" Refunding Bonds. In accordance with the provisions of the above-described refunding plan Newberry received on August 31, 1939, $128,000 par value of the City of Dunedin, Florida, Refunding Bonds in exchange for a like par value of the Series "O" Refunding Bonds previously owned by him. On August 31, 1939, petitioner received interest in the amount of $2,240 covering interest on the 1938 Refunding Bonds at one percent for the period from January 1, 1938, to January 1, 1939, and at 1 1/2 percent from January 1 to July 1, 1939. The fair market value of the City *181 of Dunedin, Florida, Refunding Bonds was, on April 14, 1938, $250 for each $1,000 par value bond. In 1941 Newberry sold $105,000 par value of City of Dunedin, Florida, 1938 Refunding Bonds for $69,975. In his income tax return for 1941 the petitioner claimed that he had sustained a long-term capital loss upon the sale of his $105,000 par value of the above-described bonds of $32,715 (cost $102,690, sales price $69,975). In his determination of the deficiency the respondent has determined a long-term capital gain upon the sale in the amount of $43,725 (sale price $69,975, less fair market value at date of exchange $26,250). Sarasota County, Florida, 6 Percent Road (Miakka) Bonds On February 25, 1925, Newberry purchased $15,000 par value Sarasota County, Florida, 6 Percent Road (Miakka) Bonds dated August 1, 1924, at a cost of $16,498.50. Of these bonds $5,000 were to mature on August 1, 1944, $5,000 on August 1, 1949, and $5,000 on August 1, 1954. Newberry received interest on the abovedescribed bonds until February 1, 1933, when the first default occurred. Thereafter Sarasota County took steps for the refunding of such bonds with other bonds of a like par value but bearing *182 a lower rate of interest. Newberry deposited his bonds with the Sarasota County Refunding Agency which was set up for the purpose of effecting a substitution of refunding bonds for the defaulted bonds. In 1935 and 1936 Newberry received payments of a part of the interest owed upon his bonds. On January 2, 1937, Newberry received $15,000 par value Sarasota County, Florida, Road and Bridge Refunding Bonds, Series "A", in exchange for his bonds. The Refunding Bonds were dated October 1, 1932, and had a maturity date October 1, 1957. Interest was to be paid at 3 percent from the date of the bonds to October 1, 1937; at 4 percent from that date to October 1, 1942; at 5 percent from that date to October 1, 1952; at 5 1/2 percent from that date to maturity. The fair market value of the substituted bonds was on December 23, 1936, $700 for each $1,000 par value bond. On October 1, 1941, the above-referred to Refunding Bonds received by Newberry on January 2, 1937, were redeemd at par. In his income tax return for 1941 Newberry reported a long-term capital loss from the redemption of his $15,000 par value Refunding Bonds on October 1, 1941, of $1,548.50 which was alleged to represent *183 the difference between the reported cost to him of his bonds, $16,548.50, and $15,000, the redemption price. In the determination of the deficiency the respondent has held that Newberry realized a long-term capital gain from the transaction of $4,500 represented by the difference between the amount received on redemption and the fair market value of the bonds on December 23, 1936. On the same date on which Newberry purchased his $15,000 par value Sarasota County, Florida, 6 Percent (Miakka) Bonds his wife, Harriet B. Newberry, purchased a like amount of said bonds with the same maturity dates, paying therefor the same amount that Newberry paid for his bonds. All of the the facts relating to the investment of Newberry in these bonds has equal application to the investment by his deceased wife. The only question posed in Docket No. 4123 is the basis for computing gain or loss upon the redemption on October 1, 1941, of the $15,000 of the above-described bonds owned by Harriet B. Newberry, deceased. Oakland County, Michigan, Campbell Road and Red Run Improvement District Bonds On November 24, 1924, Newberry purchased $25,000 par value 6 Percent Oakland County, Michigan, Campbell *184 Road and Red Run District Bonds at a total cost of $26,725. The bonds were dated April 1, 1924, and were due April 1, 1934. Newberry received interest on these bonds regularly to October 1, 1931. Default was made in the payment of interest due April 1, 1932. A bondholders' committee was organized to represent the holders of these and similar bonds. Pursuant to a deposit agreement dated November 1, 1932, Newberry, on December 27, 1932, deposited his bonds with the bondholders' committee and, on February 1, 1933, received certificate of deposit #D-180 for the bonds. As a result of a plan developed by the bondholders' committee, a settlement was reached with the officials of the drain district and accepted by the committee on behalf of the petitioner and others for the payment of certain interest on the bonds. Pursuant to such agreement, Newberry received, in 1938, interest on the bonds covering the period October 1, 1931, to April 1, 1937, at 4 percent, and from April 1, 1937, to October 1, 1938, at 3 percent, less the deduction for expenses of $50 per deposited bond and, in 1939, interest on the bonds covering the period from October 1, 1938, to April 1, 1939, at 3 percent. On *185 December 23, 1941, the Detroit Trust Co., acting as agent for the bondholders' committee, received from the County Drain Commissioner of Oakland County, Michigan, $180 for each $1,000 par value Oakland County, Michigan, Campbell Road and Red Run Improvement District Bond and at such time such agent made the following endorsement on each of the bonds: "By payments made this day the principal due on this bond has been reduced to Seven Hundred Dollars ($700.00) and the interest hereon has been fully paid to and including October 1, 1941. (signed) Earl L. Clark, County Drain Commissioner, Oakland County, Michigan." Dec. 23, 1941. On December 29, 1941, Newberry received a check in the amount of $4,500 from the Detroit Trust Co., as agent for the bondholders' committee, representing the $180 due on each of the 25 $1,000 par value bonds of the Improvement District owned by him. In his 1941 income tax return Newberry claimed a capital loss of $3,517.50 as a result of the above-described transaction relative to the above-mentioned bonds. The loss was computed as follows: Cost of portion of bonds redeemed
$8,017.50
(30% of $26,725 - cost of bonds)
Cash received (180 X 25)
4,500.00
Loss
$3,517.50
Capital loss recognized
$1,758.75
*186 In the determination of the deficiency the respondent has disallowed the deduction of any loss whatever sustained in 1941 in respect of the above-described transaction. Opinion (1) The first question for consideration is whether the petitioner, Truman H. Newberry, sustained any loss upon his investment in bonds of Macomb County Nine Mile-Halfway Drain District 6 Percent Bonds deductible from gross income in his return for 1941. In such return the petitioner claimed the deduction of $102,660.22 representing his investment in $100,000 par value of those bonds and of $1,000 paid by the petitioner in 1941 to the bondholders' protective committee as his share of the expense of the litigation. In his deficiency notice the respondent treated this aggregate deduction of $103,660.22 as a long-term capital loss sustained by the petitioner in 1941 and allowed the deduction of one-half thereof ($51,830.11). By an amended answer the respondent contends that he erred in allowing the deduction of the $51,830.11 and claims an increase in the deficiency in the amount of $15,549.03. Relative to this issue the respondent makes three contentions: (1) that the loss was sustained not in 1941 but *187 in 1926, the year in which the bonds were purchased; (2) in the alternative, that the loss was sustained in 1942 when a motion for a rehearing of a petition for certiorari was denied by the United States Supreme Court; and (3) if the loss was sustained in 1941 it was a capital loss and not an ordinary loss. We think that the respondent was in error in treating the $1,000 paid by the petitioner in 1941 to the bondholders' protective committee as a part of the cost of the bonds. It was petitioner's share of the expense of the litigation. Section 23 (a), Internal Revenue Code, as amended by section 121 (a) and 121 (d) of the Revenue Act of 1942, provides for the deduction from gross income of: (2) Non-trade or Non-business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. We think that the $1,000 paid to the bondholders' protective committee is deductible as an amount "paid * * * during the taxable year for the * * * conservation * * * of property *188 held for the production of income." The respondent's contention that the petitioner's loss of his investment of $102,660.22 was a loss sustained in 1926 is unrealistic. It is based upon the proposition that since the bonds were held by court decisions to have been invalidly issued, the Drain District never had an indebtedness to the petitioner represented by the bonds. The respondent cites Luke & Fleming, Inc., 1 B.T.A. 12, in which it was said: "* * * a debt which never existed had no value to lose." It is therefore argued that since the petitioner could not have obtained a deduction as a bad debt charged off in 1941, he no more could have had a loss sustained in that year. He also cites Parker Wire Goods Co., 8 B.T.A. 448, in which it was held that certain transfers of money and property by the president and minority stockholder of the taxpayer to another corporation in which the president and minority stockholder was the principal stockholder - the latter corporation being at all times insolvent - amounted to a fraudulent appropriation of the taxpayer's goods and that the losses sustained by the taxpayer on account thereof were deductible as "losses sustained *189 during the taxable years 1918 and 1919" instead of as "debts ascertained to be worthless and charged off within the year such losses were discovered." We do not think that the principle of the above cited cases has any application to the proceedings at bar. The question of when a loss is sustained calls for a practicable test, not a legal test. So far as the record shows the bonds of the Drain District held by the petitioner had a value in 1926 and for many years thereafter. The petitioner received interest upon his bonds through 1931. In 1936 the petitioner sold certificates of deposit representing $75,000 par value of the bonds for $30,322. Clearly it can not be said that with the application of a practicable test to the problem presented the petitioner sustained a loss upon his bonds in 1926. The next contention of the respondent is that the loss was sustained in 1942 rather than in 1941 for it was not until 1942 that the United States Supreme Court denied a motion for a rehearing of the application for a petition of certiorari. It is true that ordinarily a loss may not be taken except upon a closed and completed transaction. But it is equally true that a loss may be taken *190 in the year in which the loss is established by an "identifiable" event. The evidence in this case shows that the Supreme Court denied a writ of certiorari in the case on October 13, 1941. Its mandate was immediately issued to the United States Circuit Court of Appeals which in turn issued its mandate to the District Court. The mandate was filed in the District Court on October 22, 1941. That action terminated the litigation in the absence of a reversal by the Supreme Court of its action in denying the writ of certiorari. For all practicable purposes the litigation was closed in 1941. We sustain the contention of the petitioner that the loss of his investment in the bonds of the Drain District was sustained in 1941. The third contention of the respondent is that if the loss was sustained in 1941 it was a long-term capital loss and that the petitioner is entitled to deduct only one-half of the amount thereof. Section 23 I.R.C. provides for the deduction from gross income: (g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. * * * * *
(k) Bad Debts. - *191 * * * * *
(2) Securities Becoming Worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless within the taxable year and are capital assets, the loss resulting therefrom shall, in the case of a taxpayer other than a bank, as defined in section 104, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. (3) Definition of Securities. - As used in paragraphs (1), (2), and (4) of this subsection the term "securities" means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form. It is the petitioner's contention that the bonds of the Macomb County Nine Mile-Halfway Drain District were not "securities" within the meaning of section 23 (k) (3) because they were held by the courts to be invalidly issued. We do not think that there is any merit in this contention. In the hands of the petitioner these bonds represented securities. If the litigation had been determined favorably to the bondholders' *192 contentions and the liability of the Drain District for the payment of the bonds had been established there could be no question but that they were securities within the meaning of section 23 (k) (3). An unfavorable decision from the bondholders' standpoint did not change the character of the bonds as "securities." We sustain the respondent's contention that petitioner is entitled to deduct from his gross income of 1941 only one-half of his investment in the bonds. (2) The second question in issue is whether petitioner Newberry realized a long-term capital gain upon the sale in 1941 of $105,000 par value City of Dunedin, Florida, 1938, Refunding Bonds and whether both petitioners realized long-term gains from the redemption in 1941 of Sarasota County, Florida, 6 Percent Road (Miakka) Bonds. The only question here is whether the basis for computing gain or loss is the cost of the original bonds or the fair market value at the date of exchange of refunding bonds received in substitution for them. Upon default in the payment of interest on these bonds the petitioners deposited their bonds with the Refunding Agency set up for the purpose of protecting bondholders' interests and making *193 such arrangements as the agency could with the political subdivision which had issued the bonds. The Refunding Agency made agreements with the political subdivisions for the suance of refunding bonds in place of the defaulted bonds. In due time the petitioners received from the agency the refunding bonds which were for the same principal amount but which would mature at a later date and which contained provisions for the payment of interest at lower rates. The facts in this case are much the same as those which obtained in Motor Products Corporation, 47 B.T.A. 983; affd. (C.C.A., 6th Cir.), 142 Fed. (2d) 449. We there held that a refunding of outstanding defaulted bonds of the City of Detroit, pursuant to a refunding agreement, did not create a new debt but resulted in the continuation of the existing indebtedness and that the taxpayer's surrender of defaulted bonds and receipt of the refunding bonds in lieu thereof was not an exchange of property giving rise to recognized gain or loss. The respondent seeks to distinguish that case from the present one upon the ground that here the refunding bonds bore a different rate of interest and that in connection *194 with the refunding bonds the obligor had provided additional revenues for the payment of interest and principal. He submits that the question whether the refunding bonds were simply a continuation of the original indebtedness depends upon the degree of difference between the refunding bonds and the original issue; that the refunding bonds issued by the political subdivisions of Florida were sufficiently different from the original bonds to require a different rule from that which was invoked by the court in the above-cited case. We think that our opinion in the above-entitled proceeding controls the issue here presented. The refunding bonds merely continued the indebtedness of the political subdivision They did not create a new or different indebtedness. The petitioners made no voluntary exchange of their bonds for other bonds of the political subdivision. In Weiss v. Stearn, 265 U.S. 242, it was said: * * * Questions of taxation must be determined by viewing what was actually done, rather than the declared purpose of the participants, and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard matters of substance *195 and not mere form. We do not think that upon the substitution of the refunding bonds for the original bonds the basis for computing gain or loss upon the sale or disposition of the refunding obligations changed. We sustain the contentions of the petitioner. (3) In his return for 1941 Newberry claimed a deduction for a capital loss of $1,758.75 resulting from the receipt of $4,500 in cash in settlement of $7,500 principal amount of Campbell Road and Red Run Improvement District Bonds in the aggregate principal amount of $25,000. The payment to petitioner and the reduction in the principal amount of the outstanding bonds resulted from the acceptance by a bondholders' committee acting on behalf of the petitioner of the offer of the Drain Commissioner of Oakland County to pay $180 on the principal amount of each $1,000 bond in consideration of a reduction of $300 in the principal amount of such bond. Payment in accordance with this offer was made on December 23, 1941, to the Detroit Trust Co. as depositary of the bondholders' committee and at the time of such payment the Drain Commissioner made an endorsement upon each bond that the principal of the bond was reduced from $1,000 to *196 $700. The respondent in his notice of deficiency allowed no loss in respect of the above-described transaction. Section 117 (f), Internal Revenue Code, provides as follows: (f) Retirement of Bonds, Etc. - For the purposes of this chapter, amounts received by the holder upon the retirement of bonds, debentures, Lotes, or certificates or other evidences of indebtedness issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form, shall be considered as amounts received in exchange therefor. In McClain v. Commissioner, 311 U.S. 527, it was held that a loss sustained on surrender of bonds or debentures in exchange for a money payment less than cost was subject to the limitations on capital losses under section 117 of the Revenue Act of 1934 and was not deductible as a bad debt. In its opinion the Supreme Court said: It is plain that Congress intended by the new sub-section (f) to take out of the bad debt provision certain transactions and to place them in the category of capital gains and losses. The question is whether by employing the word "retirement" the *197 transactions here involved were so transferred. We hold that they were. "Retirement" aptly describes what occurred in the instant cases. The statute does not use the word in an unusual or artificial sense. In common understanding and according to dictionary definition the word "retirement" is broader in scope than "redemption"; is not, as contended, synonymous with the latter, but includes it. Nothing in the legislative history of the provision requires us to attribute to the term used a meaning narrower than its accepted meaning in common speech. We are of the opinion that there was a retirement of a part of the petitioner's bonds within the meaning of section 117 (f), I.R.C.
In William H. Noll, 43 B.T.A. 496, the receiver paid to the taxpayer as dividends approximately 80 percent of the face amount of Joint Stock Land Bank bonds held by the taxpayer. The Commissioner argued that since Noll merely received payments on part of the principal of the bonds, no retirement occurred. We rejected this argument and held that a retirement had occurred, saying: * * * 203/290 of the face amount of the bonds owned by petitioner was paid to him. In "common *198 speech" the bonds were partially retired. The statute (sec. 117 (f), supra) does not require that the bonds be wholly retired. "Amounts received by the holder upon the retirement of bonds * * * shall be considered as amounts received in exchange therefor." Being of the opinion that the stipulated amounts were received by this petitioner "upon the retirement" of his bonds, we hold that the gains realized by him are to be taxed as capital gains. We sustain the petitioner Newberry's contention that there was a partial retirement of his bonds in 1941 and that a capital loss was sustained by him in the amount of $3,517.50, one-half of which is deductible from gross income. Decisions will be entered under Rule 50.