Bobby R. DAUZAT and George
W. Dauzat

v.

**FEDERAL CROP INSURANCE
CORPORATION.**

Civ. A. No. 15927.

United States District Court,
W. D. Louisiana,
Alexandria Division.

March 8, 1972.

Harold J. Brouillette, Marksville, La., for plaintiffs.

Donald E. Walter, U. S. Atty., and Paul Lynch, Asst. U. S. Atty., Shreveport, La., for defendant.

NAUMAN S. SCOTT, District Judge:

The plaintiffs, Bobby R. Dauzat and George W. Dauzat, bring this action against the Federal Crop Insurance Corporation to recover for the loss of 242 acres of soybeans planted in Avoyelles Parish, Louisiana. The FCIC denies that this acreage is within the coverage of the policy which was issued to the plaintiffs. The case was submitted to the Court on stipulated facts.

In January of 1969, the plaintiffs were assisted by Mr. Leo Riche, an Avoyelles Parish farmer previously known to them and an agent of the FCIC, in renting a tract of land consisting of approximately 800 acres upon which they intended to plant soybeans. They inquired of Riche about crop insurance and within a period of a few days Riche answered that only 450 of the 800 acres was insurable. Riche then went with the plaintiffs to the tract and, with the aid of a map, pointed out the exact location of the insurable 450 acres. The plaintiffs state that they were never informed by anyone about the existence of a County Actuarial Map nor did they have knowledge of the exact township, range or section in which the land was located. They further state that all of the paper work in connection with the insurance application was prepared by Riche and that they relied completely upon him in this matter.

The plaintiffs then proceeded to plant the entire 800 acres in soybeans. On or about July 8, 1969 the plaintiffs received a document styled "SUMMARY OF FEDERAL CROP INSURANCE PROTECTION" from the FCIC which indicated that 450 acres were covered by the policy. In late July the entire soybean crop was lost due to flooding. The plaintiffs were then informed that the coverage extended only to 208 acres. The plaintiffs refused to file their claim. The FCIC agreed then to pay the plaintiffs for their loss on the 208 acres without requiring them to release their claim to the remaining 242 acres. Payment was made in accordance with that agreement and this action was then instituted.

The affidavits of Theo. A. Mills and Elvis O. Holley, employees of the FCIC, state that, in accordance with the applicable County Actuarial Map, only 208 acres of the tract were designated as insurable. Mr. Mills conducted an investigation to determine the insurable acreage on August 26, 1969 and Mr. Holley on November 17, 1969.

The question to be resolved is whether or not the actions of the agent of the FCIC established coverage on the 450 acres rather than the 208 acres as claimed by the FCIC; and, if so, whether or not the plaintiffs are entitled to statutory penalties and attorney's fees as provided in La.R.S. 22:658.

Paragraph 2(c) of the policy which was issued to the plaintiffs provides in part as follows:

"(c) The acreage insured for a crop for each crop year shall be that acreage in the county planted to the crop on insurable acreage, as shown on the actuarial table, as reported by the insured or as determined by the corporation, whichever the corporation shall elect."

The plaintiffs contend that, in this case, the insurable acreage is "as determined by the corporation". That is, their contention is that the acts of Riche in determining that 450 acres was insurable and the action of the FCIC in issuing the "SUMMARY OF FEDERAL CROP INSURANCE PROTECTION" on 450 acres constituted a determination of insurable acreage within the meaning of the policy.

The Code of Federal Regulations at 7 C.F.R. § 401.106 provides:

"The Contract shall consist of the policy and the endorsements for the crops covered by the contract, the county actuarial tables as defined in the policy, *and the application.*" (Emphasis added)

Section 19(b) of the policy defines "county actuarial table" as including the "county actuarial map(s) or lists relating to the classification of insurable and uninsurable acreage and related material . . . .". The application for crop insurance submitted by the plaintiffs provides, in part:

"The under signed applicant, . . . hereby applies to the corporation for insurance on his share . . . in the crops stated below that are insurable crops planted on insurable acreages shown on the applicable county actuarial table of the corporation for the above stated county. The applicant elects each plan of insurance, amount of insurance, or price at which indemnities shall be computed, shown below which in each case shall be an electable plan, amount or price as provided on the applicable county actuarial tables on file in the corporation's office for the above county. The premium rates and production guarantees shall be those shown on the applicable county actuarial table for each crop year."

As stated by counsel for the plaintiffs in his memorandum, a determination by the corporation concerning the amount of insurable acreage should be made at the beginning of the transaction. To allow any other course would be to allow the insurer to alter the terms of the insurance contract after its negotiation. Further, there is a provision in the application and in paragraph 7 of the policy which reads:

". . . Any changes in the contract shall be on file in the corporation's office at least 15 days prior to the applicable cancellation date."

As shown by Section 5 of the Soybean Endorsement, the cancellation date for the 1969 Louisiana soybeans is December 31, 1968. For this reason it seems clear to the Court that the FCIC made its determination upon the initiation of the transaction by the insured. The language in the application, which is declared to be a part of the policy, sets forth the type of determination to be made by the corporation; that is, that insurable acreage is to be determined by "the applicable county actuarial table". For this same reason it is clear that the "SUMMARY OF FEDERAL CROP INSURANCE PROTECTION" issued on July 8, 1969, long after the negotiation of the insurance, did not constitute a determination by the FCIC and could not alter the stated terms of the policy. It is further clear that the plaintiffs cannot rely upon the statements of Riche as a determination by the FCIC. The plaintiffs might have been able to prove that Riche had the required authority had they chosen to introduce evidence in support of their case. However, as this case is before the Court on stipulations, the only fact before the Court is the limitation of authority contained in the application regarding the use of the county actuarial tables and in the policy with reference to changes in the policy terms. The Court must, therefore, assume that Riche did not have the authority in view of the fact that the plaintiffs, the parties with the burden of proof, did not present evidence to indicate otherwise. In the case of Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the Supreme Court stated:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. But the Corporation is not a private

insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business theretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390, 59 S.Ct. 516, 518, 83 L.Ed. 784, 789. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e. g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791, 818; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 108, 85 L.Ed. 40, 48, and see, generally, Floyd Acceptances (Pierce v. United States) 7 Wall. (U.S.) 666, 19 L.Ed. 169."

The plaintiffs attempt to distinguish the *Merrill* case on the basis that the activity sought to be insured there was expressly prohibited by federal regulations and not subject to "determination by the corporation". However, in the instant matter, the policy, the application form, and the endorsement were all published in the Code of Federal Regulations, 7 C. F.R. § 401.103 and § 401.111, with adequate reference to the county actuarial tables as defined in the policy. The acreage in controversy never became insurable acreage.

■ The Court feels compelled to note that this is a close case and that the equities favoring the plaintiffs are considerable. No doubt the result would have been quite different had a private insurance company and not the Government been involved. The fact that the plaintiffs relied on the representations of the corporation's agent and that somewhat conflicting provisions are contained in the policy and application evokes sympathy for their position. It should also be noted that there would, apparently, be a large measure of difficulty involved in actually checking one's acreage to determine if it is actually insurable in accordance with the county actuarial map and that this procedure would involve some expense. Obviously the vast majority of farmers in the program rely completely on the representations of the FCIC agents. However, the Court's feeling about the necessity for improvement in the administrative procedures involved in such claims cannot justify a recovery in the face of the law. Under similar factual situations, where the plaintiffs have relied upon the misrepresentations of an agent of a government insurance corporation, they have consistently been denied recovery. Federal Crop Insurance Corporation v. Merrill, *supra*; Frier v. Federal Crop Insurance Corporation, 152 F.2d 149 (5th Cir. 1946); United States v. Feldman, 93 F. Supp. 980 (D.C.Neb.1950); inter alia.

Accordingly, plaintiffs' action is dismissed at their cost.