274 So.2d 815 (1973)
Louis L. CULPEPPER, Plaintiff-Appellant,
v.
FEDERAL CROP INSURANCE CORPORATION, Defendant-Appellee.
No. 4114.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
Rehearing Denied April 2, 1973.
*816 D. G. Brunson, Jonesboro, for plaintiff-appellant.
Robert H. Shemwell, Shreveport, for defendant-appellee.
Before FRUGE, SAVOY, and HOOD, JJ.
FRUGE, Judge.
Plaintiff seeks benefits under a crop insurance policy issued by the defendant. The district judge found plaintiff had not proved the facts required by the policy to establish his claim for loss of the soybean crop. From a judgment rejecting his entire claim and dismissing his suit, plaintiff appealed.
The substantial issues are: (1) Is the policy void due to misrepresentation and fraud of the plaintiff?; (2) can the defendant insurer reject plaintiff's entire claim because of his failure to prove exactly which 41 acres were uninsurable, exactly which 64 acres were harvested, which acres were followed without written consent, and exactly how many soybeans were harvested from which tracts?, and (3) is plaintiff entitled to recover a portion of his claim?
The facts are that in 1970 Mr. Culpepper planted 231 acres in soybeans which were insured under the crop insurance policy in question. Due to severe drought conditions, the crop did not grow. Plaintiff notified defendant of a possible loss. In September of 1970, defendant's adjuster, Mr. Roge, inspected the crop, but due to a recent rain and an improved outlook it was decided to try to carry the crop to harvest.
*817 However, the drought continued and in October of 1970 Mr. Roge returned to the Culpepper farm for another inspection. At that time, plaintiff and Mr. Roge agreed in writing to release 63 acres to be fallowed, since they would not produce sufficient beans to justify harvest. This was the only written release of acreage to be fallowed given to Mr. Culpepper in 1970.
Mr. Culpepper contends that later during the month of October, 1970, Mr. Roge inspected the crop again and instructed plaintiff to harvest only 64 acres of his beans, the understanding being that the remainder of the 231 acres was released from harvest. This alleged release of acreage was not in writing.
At some time during the latter part of October or November of 1970, plaintiff harvested only 64 acres of his soybeans which produced a total of 585 bushels. Plaintiff notified defendant of his desire to file a claim for his loss. On December 9, 1970, Mr. Roge returned to the Culpepper farm. At that time, a claim for loss was signed by plaintiff and the adjuster based on 231 acres planted to soybeans and harvested with a yield of only 585 bushels. This claim was not approved for payment by defendant's regional office.
In March of 1971, another inspector, Mr. Lady, visited the Culpepper farm. Mr. Lady had learned from some source that some of Mr. Culpepper's soybean acreage had been planted to wheat and harvested during the same crop year. Under the County Actuarial Table, which is made a part of the policy by reference, soybean acreage previously planted to wheat in the same year is not insurable. The principal purpose of Mr. Lady's visit was to determine the number of acres previously planted to wheat. Mr. Lady testified that Culpepper told him that only 13 acres of soybeans were planted behind wheat. Culpepper testified he did not give any specific acreage to Lady, but that he simply signed an amended "Claim For Indemnity" which was written by Lady and which showed 13 acres previously planted to wheat. In any event, plaintiff later furnished a corrected statement that 41 acres of soybeans were planted after wheat, and in the present litigation plaintiff concedes that these 41 acres were uninsurable. The amended claim was prepared on the basis of 218 acres of insurable beans (the 231 acres originally covered less the 13 acres deducted in the adjusted claim for indemnity). This claim was likewise rejected and the present litigation followed.

POLICY VOID FOR MISREPRESENTATION AND FRAUD
The first issue is whether the entire policy is void for misrepresentation and fraud by Mr. Culpepper. Section II of the policy provides in part that the defendant may void the policy if "the insured has concealed or misrepresented any material fact or committed any fraud relating to the contract."
The first contention of misrepresentation is that the adjusted claim for indemnity signed by Mr. Culpepper and Mr. Lady in March of 1971 showed that the entire 231 acres had been harvested, whereas only 64 acres actually were harvested. It is also contended that this form showed that only 13 acres had been previously planted to wheat, whereas actually at least 41 acres had been planted to wheat.
We think Mr. Culpepper's testimony as to what happened on the occasion of Mr. Lady's visit shows that he did not commit fraud or misrepresentation. Culpepper testified that he was alarmed and upset at Lady's accusations that plaintiff knowingly made a claim for acreage which was uninsurable because previously planted to wheat. Culpepper says he had no knowledge of the wheat exclusion, which was not in the policy but was in the County Actuarial Table of which he had never been furnished a copy. Under the circumstances, plaintiff says he told Mr. Lady to fill out the adjusted claim for indemnity in any manner Lady saw fit and that plaintiff signed it without reading it. Later, Culpepper *818 determined that actually 41 acres had been previously planted to wheat and he so informed plaintiff of this corrected figure through his attorney. It is true that the adjusted claim for indemnity, as well as the claim which was filed through Mr. Roge in December of 1970, shows that the entire 231 acres of soybeans were harvested, whereas only 64 acres were harvested. However, Mr. Roge actually signed a written release for 63 acres, and Lady testified that he filled out the form and showed the 231 acres as being harvested. This was an obvious error since Roge had already signed a written release of 63 acres. Furthermore, Lady testified that plaintiff was not required to harvest all of the insured acres, but of course the beneftis for unharvested acres would be less.
At the trial of this matter, Mr. Culpepper made no attempt to misrepresent the facts or even to be evasive. He testified clearly and forthrightly that until he had knowledge of the wheat exclusion he thought 231 acres were insured, that when he learned of the wheat exclusion and its significance he gave the correct figure of 41 acres as previously planted to wheat, and that only 64 acres were actually harvested. Under the circumstances, there was no intentional misrepresentation or fraud by Culpepper sufficient to void the policy.

REJECTION OF PLAINTIFF'S ENTIRE CLAIM FOR LACK OF PROOF
Defendant's letter dated April 27, 1971, addressed to Mr. Culpepper rejecting his claims for indemnity (defendant's Exhibit 16) reads as follows:
"Your original claim was based on 231 acres of soybeans; however, the contract provides that soybeans planted on acreage from which a 1970 wheat crop was harvested shall not be insurable. Your corrected claim shows 218 acres of soybeans, leaving a difference of only 13 acres planted to wheat. Our representatives obtained information to the effect that more than 1,200 bushels of wheat were hauled from the farm, indicating that you had considerably more than 13 acres of wheat.
"Pre-harvest inspections made by Corporation personnel in October 1970 indicate that the production realized from this soybean unit should have been much greater than the 585 bushels reported on your claim.
"Section 4(b) of the soybean endorsement provides that it shall be a condition precedent to the payment of any loss that the insured establish the production on the unit and furnish any other information regarding the extent of loss as may be required by the Corporation. In view of the circumstances described above, we do not believe that you have met this requirement; therefore, we must reject both your original and corrected claims."
From the above-quoted letter it is seen that the grounds for the initial rejection of the claim were that (1) that more than 13 acres had previously been planted to wheat, and (2) pre-harvest inspection showed that plaintiff should have produced more than 585 bushels of beans. As to the amount of the wheat exclusion, plaintiff had previous to the date of this rejection letter furnished defendant with the correct number of acres, i. e., 41 acres. This was also plaintiff's testimony at the trial and there is actually no contradiction to it. As to the assumption by the defendant that plaintiff should have produced more than 585 bushels of beans, plaintiff produced documented proof by the harvester and the purchaser of the beans to show that no more than 585 bushels were produced. There is no evidence to contradict the bean production, and apparently defendant has now abandoned this ground for rejection.
Defendant's principal contention now is that the record does not contain sufficient information to establish the loss in accordance with the formula set forth in the policy. Section 4(c) of the Soybean Endorsement provides in pertinent part:
"(c) Losses shall be determined separately for each unit. The amount of loss *819 with respect to any unit shall be determined by (1) multiplying the insured acreage of soybeans on the unit by the applicable production guarantee per acre, which product shall be the production guarantee for the unit, (2) subtracting therefrom the total production to be counted for the unit, (2) multiplying the remainder by the applicable price for computing indemnities, and (4) multiplying the result obtained in (3) by the insured interest * * * *.
"The total production to be counted for a unit shall be determined by the Corporation and, subject to the provisions hereinafter, shall include all threshed production and any appraisals made by the Corporation for unthreshed, unharvested or potential production, poor farming practices, uninsured causes of loss, or for acreage abandoned or put to another use without the consent of the Corporation: PROVIDED, that the total production to be counted on any acreage of soybeans (1) which is unharvested or from which the production harvested is less than 1.5 bushels per acre shall be the appraised production and the harvested production in excess of 1.5 bushels per acre, except as to the acreage referred to in the following items (2) and (3); (2) which is abandoned or put to another use without prior written consent of the Corporation shall be the production guarantee provided for such acreage; * * *"
Defendant contends that in order to determine the amount of benefits under this section, the following information is essential: (1) The number of insurable acres harvested; (2) actual soybean production from insurable acreage; (3) appraised production released in writing, and not actually harvested; and (4) number of acres fallowed without written consent.
As to the number of insurable acres harvested, the defendant concedes the record shows 41 acres were uninsurable because previously planted to wheat. But the record does not show which 41 acres was insurable, nor does it show which 64 acres were actually harvested. Defendant says it is therefore impossible to determine the number of insurable acres which were harvested. We agree with defendant on this point. The plaintiff has not proven facts which would support an award of indemnity in the amount which he prayed for. However, the facts that were proven show that the plaintiff did suffer a certain amount of insured loss. At the trial, Mr. Culpepper's explanation of his inability to identify exactly the uninsurable 41 acres or the 64 harvested acres was that two years had elapsed and he simply could not remember these details. In view of the fact that the plaintiff's 231 acres of soybeans consisted of seven different tracts which varied in size, shape and location, we think this is a logical explanation.
We think the provisions of the policy requiring detailed information should not be so strictly construed as to hold that if the exact information is not furnished, the defendant can deny the entire claim. In our view, the defendant must pay that portion of the loss which the plaintiff has established with legal certainty, and for the reasons set out below we conclude plaintiff has proved at least a portion of his loss.

PORTION OF CLAIM PROVED BY PLAINTIFF
The record shows that of plaintiff's 231 acres of soybeans, 64 were harvested, 63 acres were released in writing to be fallowed, and that the remaining 104 acres were fallowed without written consent of the corporation. Forty-one acres out of plaintiff's 231 acres were uninsurable. The County Actuarial Table provides that soybeans planted after wheat in the same crop year are not insurable. Although plaintiff was unaware of the existence of the County Actuarial Table, they are made a part of the insurance contract by reference. Plaintiff concedes in this court that these 41 acres are uninsurable. See: Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); and Dauzat v. *820 Federal Crop Insurance Corp., 339 F.Supp. 567 (Western District of Louisiana, 1972).
Defendant points out in his brief that Mr. Culpepper's failure to prove which 41 acres were uninsurable, which 64 acres were harvested, and which 63 acres were fallowed with consent constitutes a failure to prove the exact extent of his loss. However, by assuming the facts most unfavorable to plaintiff, it is possible to compute the minimum award to which plaintiff is entitled. Under the terms of the contract, the total production on the acres fallowed without consent are equal to the production guarantee for those acres. Thus, Culpepper is entitled to no indemnity on those acres. Defendant, in brief, assumes for the sake of argument that the 41 uninsured acres were included in this acres fallowed without consent and shows that this assumption is most favorable to plaintiff. An award based on this assumption would total $1,875.
If we were to assume that the 41 uninsurable acres were part of the acres harvested, then Culpepper's indemnity due would be $1,581.95. The 64 acres harvested yielded 585 bushels or 9.14 bushels per acre. The production guarantee on these acres was 12 bushels per acre. Thus, Culpepper's production loss on these acres was only 2.86 bushels per acre. However, plaintiff Culpepper has not proven to a legal certainty facts on which an award of $1,581.95 could be based.
The assumption most unfavorable to plaintiff under the facts of this case is that the uninsured acres were a part of the acres fallowed with consent, for on those acres Culpepper sustained his greatest production loss. The production guarantee on the acres fallowed with consent was 10.5 bushels per acre and the appraised production on those acres was 1.5 bushels per acre. Thus, Culpepper's production loss on these acres was about 9 bushels per acre. If we were to assume that the 41 uninsurable acres were part of the acres fallowed with consent, then the indemnity due would be only $952.50.

 (1) (2) (3) (4) (5) (6) (7)
 No. of Per Acre Total Prod. Total Prod. Indemnity
 Acres Production Production Per Prod. Loss Due
 Guarantee Guarantee Acre (3)-(5) $2.50 x (6)
Uninsured
Acreage 41
Acres
Harvested 64 12.00 768.00 9.14 585.00 183.00
Acres
fallowed
with
consent 22 10.5 231.00 1.5 33.00 198.00
Acres
fallowed
without
consent 104 10.5 1092.00 10.5 1092.00 -0-
 ___ _______ _______ ______ _______
 231 2091.00 1710.00 381.00 $952.50
(Prod.abbreviation for production)

If we were to assume that the uninsured acres were partially harvested, partially fallowed with consent, and partially fallowed without consent, or any combination of the above possibilities, the indemnity due would necessarily fall somewhere between $1,875 and $952.50. We conclude that from the bare facts proven it must follow that Culpepper suffered at least a $952.50 insurable loss.
*821 Interest or damages are not due to plaintiff on the amount of this judgment. 7 C.F.R. § 401.111(10) provides in part:
"However, in no event shall the corporation be liable for interest of damages in connection with any claim for indemnity whether such claim be proved or disapproved by the corporation."
For the foregoing reasons, the judgment of the trial court is reversed and it is hereby ordered, adjudged, and decreed that there be judgment herein in favor of Louis L. Culpepper for the full sum of $952.50. It is further ordered, adjudged, and decreed that all costs of the proceeding in the lower court be assessed to defendant-appellee. All costs of this appeal are assessed to defendant-appellee.
Reversed.