McNALLY BROTHERS, INC., Plaintiff,

v.

LOCAL 816, INTERNATIONAL BROTH-
ERHOOD OF TEAMSTERS,
Defendant.

No. 74 Civ. 55.

United States District Court,
S. D. New York.

March 27, 1974.

Hale & Russell, New York City, for plaintiff; John P. Hale, New York City, of counsel.

Jack Last, New York City, for defendant.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff employer, a general trucker, and the defendant union are parties to a collective bargaining agreement covering chauffeurs and helpers who perform under a contract which plaintiff has with the New York City Board of Education ("Board") for the transportation of school supplies.[1] The agreement contains a no-strike, no-lockout provision and a grievance and arbitration procedure in the event of "any controversy which might arise."[2] The Board generally has handled its own trucking of school supplies, using its own employees,

---

1. The current collective bargaining agreement is a renewal of prior agreements which have governed the parties' relationship during the past eight years.

2. Teamsters National Master Freight Agreement, Art. 46, § 1, p. 108 (Apr. 1, 1970—June 30, 1973).

but from time to time, because of inadequacy of staff or vehicles, has called upon plaintiff to supply the required additional personnel and trucks. For such purposes plaintiff, over an extended period, has employed non-union and union employees, but not in accordance with the seniority, wage or other provisions of the agreement. Plaintiff's position has been that the school lunch program is not covered by the agreement; the union contends otherwise. The controversy came to a head in October 1973, when the union invoked the grievance machinery by filing a complaint with the New York Joint Local Committee composed of employers and employees' representatives.[3] After a hearing before the Committee on December 20, at which plaintiff appeared and was heard, the defendant's position was upheld. Plaintiff was ordered to comply with the provisions of the collective bargaining agreement and to pay school lunch program employees all moneys due for wages, welfare and pension. Plaintiff then commenced this action pursuant to 29 U.S.C., section 185, and applied for and was granted a temporary restraining order which enjoined the union from enforcing the arbitration decision by strike or other coercive action.[4] It now moves for similar preliminary injunctive relief pending a final determination of this action.

Plaintiff, in seeking injunctive relief, challenges the jurisdiction of the arbitration panel on the same grounds upon which it resisted the union's complaint before the panel, to wit, that the school lunch program employees were not covered by its contract with the union, and hence the panel lacked jurisdiction to decide the controversy; also, plaintiff contends the defendant's actions deprived those employees of the right to select their own collective bargaining representative, in violation of 29 U.S.C., section 158(b)(1).

Plaintiff's essential position is that the dispute was not arbitrable under the contract. It recognizes that if it is, then this court is without jurisdiction under the Norris-LaGuardia Act[5] to grant the requested injunction. The only exception to the Act's prohibition against the issuance of injunctions in labor disputes[6] is the rule enunciated in Boys Markets, Inc. v. Retail Clerks Local 770,[7] where the Supreme Court held that a labor union may be enjoined from violating a no-strike clause in its collective bargaining agreement if the dispute with the employer is within the scope of the contract's mandatory grievance adjustment or arbitration procedure. *Boys Markets'* underlying rationale is that "the central purpose of the Norris-LaGuardia Act to foster the growth and viability"[8] of unions would be advanced rather than retarded by specific enforcement of the union's commitment to submit disputes to arbitration. Obviously *Boys Markets* does not apply.

---

3. Teamsters National Master Freight Agreement, Art. 45, § 1, p. 105 (Apr. 1, 1970—June 30, 1973).

4. The collective bargaining agreement provides: "Failure of any party involved to comply with such decision or award within ten (10) days thereafter, will remove restrictions against any legal or economic recourse by the other party as prohibited by Section 1 of this Article, notwithstanding any action taken to set aside, confirm, modify, or enforce such decision or award, until such time as the award is actually vacated, it being the intention of the parties that decisions and awards rendered pursuant to the procedures set forth in this Article be complied with immediately regardless of any legal proceedings. . . . " Teamsters Na-

tional Master Freight Agreement, Art. 46, § 1(a), p. 110 (Apr. 1, 1970—June 30, 1973).

5. 29 U.S.C. § 101 et seq. (1970).

6. 29 U.S.C. § 113(c) defines "labor dispute" as including "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment . . . ." The instant case clearly falls within this definition, which plaintiff does not appear to dispute.

7. 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

8. *Id.* at 252, 90 S.Ct. at 1593.

Here it is the union that submitted its complaint to the grievance procedure; it is the employer who challenges the arbitration process.

■ Upon its face, the agreement to resolve by means of the grievance and arbitration procedure "any controversy which might arise" is all-inclusive; there is nothing to suggest any limitation or exception. However, on this motion for preliminary relief it is unnecessary to decide the scope of the arbitration provision, which in effect would dispose of the case on the merits and which may require testimony as to the intent of the parties. Assuming arguendo that the issue was beyond the jurisdictional competence of the arbitrators —that it is not a "controversy" encompassed under the agreement—then a "labor dispute" exists within the meaning of the Norris-LaGuardia Act, and this court is powerless to enjoin a union in connection with it. That an injunction is not warranted at this time does not mean that plaintiff is foreclosed from seeking other means to sustain its contentions. As to its claims that defendant's actions in assuming to represent school lunch program employees constitutes an unfair labor practice, it may apply to the National Labor Relations Board.[9] Moreover, its challenge to the New York Joint Local Committee's jurisdiction to decide the disputed issue is a matter to be determined by the court.[10] Nevertheless, since even under the analysis of the dispute most favorable to plaintiff it does not come within the *Boys Markets* exception to the Norris-LaGuardia Act, the court is prohibited from granting plaintiff the injunctive relief it seeks.[11]

■ Entirely apart from these considerations, plaintiff, upon the papers here presented, has not made such a showing as to indicate likelihood of success upon the trial or that the balance of hardships weighs in its favor.[12] The defendant's request for reasonable attor-

9. *See* 29 U.S.C. § 160 (1970). In addition to the present action, on November 28, 1973, plaintiff filed an unfair labor practice charge against defendant with the National Labor Relations Board, alleging that the union had unlawfully attempted to extend its jurisdiction over employees of plaintiff who were not covered by a collective bargaining agreement. In February 1974, the plaintiff, with the NLRB's approval, withdrew its charge. However, in the light of what it views as a favorable change in the applicable law subsequent to the withdrawal, plaintiff has refiled the charge. *See* Sperry Systems Management Div. v. NLRB, 492 F.2d 63 (2d Cir., 1974).

10. *See* Operating Engineers Local 150 v. Flair Builders Inc., 406 U.S. 487, 491, 92 S. Ct. 1710, 32 L.Ed.2d 248 (1972); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

11. *Cf.* Associated Gen. Contractors v. Illinois Conference of Teamsters, 454 F.2d 1324 (7th Cir. 1972). Plaintiff has cited several cases in support of its argument that 29 U. S.C. § 185 gives the court jurisdiction to enjoin defendant here. These are cases, however, where courts have reviewed arbitration procedures without issuing injunctive relief against a union, Hod Carriers Local 227 v. Sullivan, 221 F.Supp. 696 (E.D.Ill.1963); American Stores Co. v. Johnston, 171 F.

Supp. 275 (S.D.N.Y.1959); or have held that federal courts have jurisdiction to enjoin an employer from violating a collective bargaining agreement by refusing to abide by an arbitrator's award, Milk & Ice Cream Drivers Local 98 v. Gillespie Milk Prods. Corp., 203 F.2d 650 (6th Cir. 1953); or have issued an injunction enforcing an arbitration award, entered pursuant to a collective bargaining agreement, directing a union and its members to desist from work stoppages, New Orleans S. S. Ass'n v. General Longshore Workers Local 1418, 389 F.2d 369 (5th Cir.), cert. denied, 393 U.S. 828, 89 S.Ct. 92, 21 L.Ed.2d 99 (1968). In no case was an injunction issued against a union that was found not to have violated its collective bargaining agreement, or for actions by a union in an area arguably outside the scope of the agreement. Furthermore, the Norris-LaGuardia Act does not permit a court to issue a preliminary injunction against a union in order to preserve the status quo pending its determination of the merits of the case. *See* Associated Gen. Contractors v. Illinois Conference of Teamsters, 454 F.2d 1324 (7th Cir. 1972).

12. *See* Pride v. Community School Board, 488 F.2d 321, 324 (2d Cir. 1973); Pride v. Community School Board, 482 F.2d 257, 264 (2d Cir. 1973); Stark v. New York Stock Exchange, Inc., 466 F.2d 743, 744 (2d Cir. 1972).

neys' fees and costs in defending this action and the motion for a temporary restraining order, pursuant to 29 U.S.C., section 107, is denied but without prejudice to renewal upon the final disposition of the matter on the merits.